**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Franklin David HOWARD,**
**Defendant–Appellant.**

**No. 91–8456**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 12, 1992.

Rehearing and Rehearing En Banc
Denied April 9, 1992.

---

T. Peter O'Callaghan, Jr., Cedartown, Ga., for defendant-appellant.

Candiss L. Howard, Bryan J. Farrell, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

In this appeal, we are presented with the following issues: (1) whether the district court abused its discretion by allowing the government to introduce testimony to prove the contents of a recorded conversation, in addition to the inaudible recording itself; and (2) whether the actions of the Georgia Highway Patrol in conducting a roadblock under the directions of the Drug Enforcement Agency should be held unlawful and set aside. Finding no merit to the second issue, we summarily affirm. However, since the first issue presents a question of first impression in this circuit, we feel compelled to address it in more detail.

## I. PROCEDURAL BACKGROUND

The appellant, Franklin David Howard ("Howard"), was indicted in a one-count indictment of attempting to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846. After Howard's pretrial motion was denied as being untimely filed, the case was set for trial and tried before a jury. Howard was convicted and sentenced by the district court to a forty-one month period of confinement to be followed by a three-year period of supervised release. Additionally, Howard was fined $7,500.00 and required to pay a $50.00 assessment. Howard then perfected this appeal.

## II. FACTS

The record demonstrates that in April 1990, Howard approached his long-time friend and fellow resident of Cedartown, Georgia, Richard Landrum ("Landrum"), and asked him for help in obtaining fifty-one hundred pounds of marijuana. At the time of the inquiry, Howard was aware that Landrum had recently been arrested on narcotics charges in Alabama. Landrum referred this information to the Drug Enforcement Agency ("DEA"). Landrum was subsequently introduced to DEA agent Mike Dolan ("Dolan"). After debriefing Landrum with DEA agent Jack Harvey ("Harvey"), Dolan instructed Landrum to make a monitored telephone call to Howard later that same day to discuss the marijuana deal. Prior to making the call, Dolan told Landrum that the scenario would be that an individual by the name of "Mike" would be bringing the marijuana in from Texas. As originally planned, Dolan was to pose as "Mike."

Numerous monitored telephone conversations between Landrum and Howard were recorded. During one of the conversations, Howard stated that a portion of the purchase money would be provided by a third party. Howard's side of the taped conversation was only partially audible, so the district court, after having the tape played for the jury, permitted, over objection, the monitoring agent, Harvey, to testify as to its contents. According to Harvey, Howard made references during the call to an earlier attempt on his part to purchase marijuana and to the manner and price at which he planned to resell the marijuana about to be purchased.

Later, Landrum and Howard agreed to meet "Mike," the Texas supplier, at a Best Western motel in Bremen, Georgia. There, one hundred pounds of marijuana was to be exchanged for $80,000.00.

On the morning of the meeting, Landrum, wearing a voice transmitter and recording device, went to Howard's home in Cedartown. When he arrived, Howard showed him the purchase money, which he had concealed in a "six-pack" size cooler. Howard and Landrum then went to Howard's sister's house, where they picked up her Buick and, with the money in the trunk, left to pick up the marijuana.

In an effort to seize the marijuana without revealing the fact of Landrum's cooper-

ation, DEA agents planned to have Howard's car stopped by Lee Burch ("Burch"), a Georgia State Highway Patrolman. Since early May 1990, Burch had been kept fully informed of the progress and details of the investigation. Burch set up a roadblock on Youngs Farm Road in Polk County, Georgia, and stopped Landrum and Howard as they sought to pass en route to the exchange point. After advising them that he was looking for burglary tools, Burch asked for and received permission from Howard to search the vehicle. The search, which was videotaped, revealed cash hidden in the cooler in the trunk of the car. When questioned at the scene, Howard stated that the money and the car belonged to his sister. Landrum and Howard then agreed to follow Burch back to the Georgia Patrol station so that Burch could obtain and provide them with a receipt for the seized money. Burch explained to Howard that, although his money was being seized, he was not under arrest. While law enforcement officers were counting the money, which totalled $80,800.00, Harvey questioned Howard further. In contrast to his earlier statement, Howard then stated that the money was his, and that it had been derived from the sale of cows and from certain insurance settlements.

At trial, the government played four additional tape recordings of conversations between Landrum and Howard which took place within ten days after the seizure. On these tapes, Howard describes how he would explain the source of the money without admitting to additional tax liability and pondering how the police might have known of his travel plans beforehand.

In September 1990, Howard was arrested and over $2,700.00 was seized from his person incident to the arrest.

### III. STANDARD OF REVIEW

The district court's decision overruling defense counsel's objection to the admission of testimony concerning the substance of statements made by Howard during a recorded conversation, which recording was only partially audible, is reviewable only for an abuse of discretion resulting in substantial prejudice to the defendant's rights. *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir.1983).

### IV. DISCUSSION

Howard argues that agent Harvey should not have been permitted to testify as to recorded statements made by Howard which he overheard, even though, as Howard concedes, the tape was only partially audible. Howard relies on the "best evidence rule" [1] in support of his contention that Harvey's testimony was inadmissible. The best evidence rule, however, requires the introduction of original recordings, if at all, only when the content of the recording itself is a factual issue relevant to the use. *United States v. Fagan*, 821 F.2d 1002, 1008 n. 1 (5th Cir.1987); *United States v. Rose*, 590 F.2d 232, 237 (7th Cir.1978); *United States v. Gonzales–Benitez*, 537 F.2d 1051, 1053–54 (9th Cir.1976). Since the proffered testimony was offered not to prove the content of the tapes, but rather, the content of the conversations, the best evidence rule does not apply, and agent Harvey's testimonial recollection of the conversation was properly admitted. *Id.; United States v. White*, 223 F.2d 674, 675 (2d Cir.1955).

The tape in issue concerned a May 7, 1990, conversation between Landrum and Howard, which was monitored by Harvey. Harvey testified that, although much of the tape was inaudible, he was able to hear both sides of the conversation while it was taking place as though he was participating in it. At trial, Howard did not contend that the transmitting equipment was not working properly, only that the tape recording was the best and only evidence of the conversation which should have been admitted. We disagree.

---

1. The best evidence rule provides that the original documents must be produced to prove the content of any writing, recording or photo-graph. Fed.R.Evid. 1002–06; *United States v. Tombrello*, 666 F.2d 485 (11th Cir.1982).

Although this issue has not previously been addressed in this circuit, other circuit courts of appeal have determined that an event may be proved by non-documentary evidence even though a written recording of it was made. In *Fagan* and *Rose*, the defendants made the same objection Howard advances here. Interpreting Fed. R.Evid. 1002 to require, in the first instance, a determination as to whether the proponent is attempting to prove the contents of the tape, both the Fifth and Seventh Circuits held that the government was properly attempting to prove the contents of the conversation, and that it could do so through testimony whether or not a recording of the conversation had been made. *Fagan*, 821 F.2d at 1008 n. 1; *Rose*, 590 F.2d at 237. Indeed, in *Fagan*, 821 F.2d at 1008 n. 1, the court noted that the recording did exist and had been made available to the defendant, while the *Rose* court made no mention one way or the other.

Other courts which have admitted testimony and/or taped copies of recorded conversations to prove their contents have been upheld where the original recordings were either inaudible, unintelligible or had been filtered to remove background noise. *See Fountain v. United States*, 384 F.2d 624 (5th Cir.1967); *Johns v. United States*, 323 F.2d 421 (5th Cir.1963); *United States v. White*, 223 F.2d 674 (2d Cir.1955).

The best evidence rule presupposes the existence at one time of a decipherable original, and is intended to prevent fraud in proving the contents of documents and/or recordings. *United States v. Yamin*, 868 F.2d 130, 134 (5th Cir.1989). In the present case, this underlying purpose would not have been furthered by the exclusion of the agent's testimony since no audible original ever existed. Moreover, the monitoring agent testified at trial giving Howard ample opportunity to challenge through cross-examination the agent's ability to hear and recollect the substance of the conversation.

In conclusion, we are persuaded that, since the prosecution was attempting to prove the contents of the recorded conversation and not the contents of the disputed tape, the district court acted within its discretion in permitting the testimony of the listening agent. Accordingly, we affirm Howard's conviction.

AFFIRMED.