# UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

_____

No. 99-21038
_____

C P INTERESTS INC., doing business as California Pools; CALIFORNIA POOL SERVICE; CALIFORNIA POOL REPAIR & SERVICE CO

Plaintiffs - Appellees,

versus

CALIFORNIA POOLS INC., ET. AL,

Defendants,

CALIFORNIA POOLS INC; CALIFORNIA POOLS & SPAS; CALIFORNIA POOLS & SPAS INC; W DOUGLAS STEIMLE,

Defendants - Appellants.

Appeals from the United States District Court
for the Southern District of Texas

January 30, 2001

Before DUHÉ, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant-Appellant California Pools, Inc. appeals the judgment of the district court based

on a jury verdict in favor of plaintiff-appellee C.P. Interests, Inc., finding that C.P. Interests had remote junior user rights to the trademark "California Pools" in the Houston area, that California Pools had infringed those rights, and that California Pools had disparaged C.P. Interests. California Pools challenges the finding of business disparagement, the admission of expert testimony, the admission of oral testimony on the transfer of trademark rights, several jury instructions, and the admission of evidence of the use of the mark in the Dallas area. For the reasons assigned, we affirm in part and vacate in part the judgment of the district court.

I

California Pools, Inc. is a California corporation dedicated to the construction of swimming pools and spas in several western states. California Pools has constructed new pools since its inception in 1952, and filed a federal trademark registration for the mark "California Pools & Spas, Inc." in 1995. In 1997, following a failed attempt to establish a branch in Dallas in the 1980s, California Pools sought to open a Houston branch office.

In Houston, California Pools encountered a Texas corporation incorporated as "C.P. Interests, Inc." but doing business as "California Pool Repair & Service Company." C.P. Interests, Inc. is a Texas corporation that traces its roots to the "California Pool Service" company of Dallas, a company dedicated primarily to pool service and repair. Today, C.P. Interests operates exclusively in Houston and has shifted its focus to pool construction. California Pools, Inc. of California informed C.P. Interests of its intention to enter the Houston market and requested that C.P. Interests cease using the "California Pools" name.

It was C.P. Interests, however, that filed suit, claiming rights in the mark "California Pools" since 1961 on the basis of predecessor use. C.P. Interests argued that it had acquired the right to use

the "California Pools" mark by virtue of qualifying as a remote junior user of the mark, and added a claim of business disparagement. California Pools had the action removed to federal court, and counterclaimed for trademark infringement, citing its use of the mark since 1952. California Pools argued that it had priority in its use of the mark, and, *inter alia*, challenged C.P. Interests' ability to establish the alleged predecessor use.

The jury agreed with C.P. Interests and traced the company's good-faith use of the "California Pools" mark in Texas to 1963. The jury awarded damages based on trademark infringement and business disparagement, as well as punitive damages. Following post-trial motions, the court adjusted these damages and issued its final judgment, finding that C.P. Interests owned common law service mark rights in "California Pools," "California Pool Service," and "California Pool Repair and Service" for pool-related work performed within a 100 mile radius of Houston, and that C.P. Interests' use of the mark in that area did not violate California Pools' rights in the mark. The court enjoined California Pools from using the mark in the Houston area and from referring to C.P. Interests as "imposters." Finally, the court awarded C.P. interests $85,000 for common law trademark infringement, $152,000 in general damages for business disparagement, and $139,000 in punitive damages. This appeal followed.

On appeal, California Pools raises six issues: (1) whether the district court erred by awarding general damages on the business disparagement claim; (2) whether the district court abused its discretion in allowing expert testimony on trademark law; (3) whether the district court erred by permitting oral testimony regarding the trademark transfer; (4) whether the district court erred in its jury instruction on "good faith" adoption under the remote junior user exception; (5) whether the district court erred in its jury instruction on "tacking on" of trademark rights to establish priority; (6)

whether the district court abused its discretion by allowing evidence of earlier use of the mark in Dallas. C.P. Interests responds by arguing first that most of these issues were not preserved for appeal, and second that the district court ruled correctly on the merits.

II

A

California Pools first argues that the district court erred as a matter of law in awarding general damages for and ordering an injunction against business disparagement, notwithstanding C.P. Interests' failure to prove special damages. California Pools contends that C.P. Interests could not have successfully made out a business disparagement claim without the required element of special damages))damages which the district court found as a matter of law had not been proved.

Before reaching the merits of this issue, we must first address whether California Pools has waived this argument by failing to bring its motion for judgment as a matter of law (JMOL) as required by Federal Rule of Civil Procedure 50(b). We may review sufficiency of the evidence claims on appeal only if a Rule 50(b) motion was made in the trial court at the conclusion of all the evidence. *See McCann v. Texas Refining*, 984 F.2d 667, 671 (5th Cir. 1993). California Pools acknowledges that it did not make a timely Rule 50(b) motion, but argues for a liberal construction of our Rule 50(b) requirement. California Pools is correct that we have in the past forgiven Rule 50(b) errors where we determined that the purposes of the rule have been satisfied. *See id.* These purposes are "to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury." *MacArthur v. University of Texas Health Ctr.*, 45 F.3d 890, 896-97 (5th Cir. 1995).

-4-

Here, because California Pools addressed the same business disparagement issue in its written objection to the district court's proposed jury instructions, we find that the purposes of the Rule 50(b) requirement are met. *See Scottish Heritable Trust v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir.), *cert. denied*, 519 U.S. 869, 117 S.Ct. 182, 136 L.Ed.2d 121 (1996) ("A defendant's objection to proposed jury instructions on grounds pertaining to the sufficiency of evidence issues it seeks to appeal may satisfy [the purposes of the Rule 50(b) requirement]."); *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003-04 (5th Cir. 1997). California Pools' objection to the proposed jury instructions, coupled with its Rule 50(a) JMOL motion, as well as the fact that California Pools attempted on at least one occasion to remind the court verbally of its concern over the "JMOL issues," was adequate to alert both the court and C.P. Interests to California Pools' continued protest over the sufficiency of the evidence on the business disparagement issue.

We review California Pools' allegation that the district court erred as a matter of law in upholding the verdict of business disparagement and awarding general damages *de novo*. *See GAIA Tech. Inc. v. Recycled Prod. Corp.*, 175 F.3d 365, 373 (5th Cir. 1999) (challenges to the sufficiency of the evidence supporting a jury verdict are reviewed *de novo*). California Pools argues that the award cannot stand because C.P. Interests did not meet its burden of proving special damages, a required element of the tort of business disparagement. The issue turns on whether, under Texas law, attorneys fees can be a "pecuniary loss" such that no other economic harm need be proven. As our jurisdiction in this case is based on diversity of citizenship, we function as an *Erie* court, applying Texas law as we think the Supreme Court of Texas would. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Salve Regina College v. Russell*, 499 U.S. 225, 239-40, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991) (federal courts of appeals review the state law

determinations of district courts *de novo*).

In deciding the motion for entry of judgment and motion for judgment as a matter of law, the district court found that C.P. Interests was unable to prove that it had experienced a pecuniary loss other than the attorneys fees required to bring this litigation. But the court nevertheless permitted the business disparagement issue to go to the jury, explaining that "I conclude that the Restatement § 623(a) permits a cause of action for disparagement without proof of special damages; and I conclude that the Restatement § 633(b) permits recovery of general damages."

As no Texas court has specifically addressed the issue, we must make an "Erie guess" as to whether attorneys fees alone can constitute a sufficient pecuniary loss to support a claim of business disparagement under Texas law.[1] We agree with the district court that the Restatement is relatively clear on this point, and supports C.P. Interests' position that an additional pecuniary loss need not be proven. Restatement (Second) of Torts § 623A defines business disparagement as the publication of a false statement harmful to the interests of another and creates liability for the resulting "pecuniary loss." Section 633 then defines "pecuniary loss" as including "the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement." Restatement (Second) of Torts § 633(b).

The "Erie guess" is to whether the Texas courts would follow the Restatement view. California Pools urges that the Texas case law indicates to the contrary—that an additional pecuniary loss beyond litigation costs is necessary to satisfy the business disparagement cause of action. The principal business disparagement case is *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762 (Tex.

---

[1]The Restatement and the law of many states refers to the tort as "publication of injurious falsehood." Restatement (Second) of Torts § 623A (1976). Texas has renamed the tort "business disparagement."

1987), in which the Texas Supreme Court held that insurance agents in an action against their former employer were unable to make out a claim of business disparagement because they had proven only "personal" as opposed to economic damages. The court explained:

> The general elements of a claim for business disparagement are publication by the defendant of the disparaging words, falsity, malice, lack of privilege, and special damages....Proof of special damages is an essential part of the plaintiffs' cause of action for business disparagement. The requirement goes to the cause of action itself and requires that plaintiff 'establish pecuniary loss that has been realized or liquidated as in the case of lost sales.' W. Keeton, Prosser and Keeton on the Law of Torts, § 128 at 971 (5th ed. 1984). Furthermore, the communication must play a substantial part in inducing others not to deal with the plaintiff with the result that special damage, in the form of loss of trade or other dealings, is established. *Id.* at 967; Restatement (Second) of Torts § 632 (1977)."

*Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766-67 (Tex. 1987). We have relied on *Hurlbut* in similarly rejecting a business disparagement claim when the plaintiffs did not present any evidence of a direct pecuniary loss. *See Johnson v. Hospital Corp. of America,* 95 F.3d 383, 390 (5th Cir. 1996). Neither *Hurlbut* nor *Johnson*, however, addresses the issue presented in the instant case of whether the costs associated with bringing the litigation to stop the business disparagement are themselves evidence of a pecuniary loss, in turn satisfying the special damages requirement.

C.P. Interests brought this litigation in response to messages posted by California Pools both on the internet and in Houston newspaper advertisements warning customers to beware of the "imposter" C.P. Interests. These messages were widely disseminated, and there is no evidence on this record indicating whether or not it would have been possible to identify any particular customer that may have been swayed by the disparagement. *See Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F.Supp. 150 (S.D.N.Y. 1983) (recognizing that under New York business disparagement law a plaintiff must specifically identify lost customers only where it is reasonable to expect such proof). We recognize the ongoing nature of the internet disparagement, and that C.P. Interests' suit for

injunctive relief may have been the only means by which the company could defend its name.

As a federal court in a diversity case, however, we are not in a position to fill any perceived gaps in Texas tort law. When making an "Erie guess, it is not our role to create or modify state law, rather only to predict it." *Lawrence v. Virginia Ins. Reciprocal*, 979 F.2d 1053, 1055 (5th Cir. 1992). The existing Texas case law provides every indication that attorneys fees are not considered a form of pecuniary loss and do not constitute special damages. In *A.H. Belo Corp. v. H.B. Sanders*, 632 S.W.2d 145, 145-46 (Tex. 1982), the Texas Supreme Court reversed a Court of Appeals holding that Restatement § 633 was appropriately applied to permit recovery of attorneys fees as the sole form of damages in a disparagement of title suit. The court clarified that the plaintiff "was required to prove the loss of a specific sale or sales in order to recover on his slander of title action." *Id.* at 146; *see also W.G. Ellis v. G.C. Waldrop*, 656 S.W.2d 902, 904 (Tex. 1983) ("No Texas case has ever awarded damages under the rubric 'cloud on title.' A suit to remove a cloud from title is a suit for a specific, equitable remedy."). In *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 208 (Tex. 1996), the Texas Supreme Court held that in a malicious prosecution case, for which plaintiffs are also required to prove "special damages," it is "insufficient that a party has suffered the ordinary losses incident to defending a civil suit, such as embarrassment, discovery costs, and attorney's fees." *Id.* at 208-09. The court recognized that "this rule may leave a party without a remedy for indirect losses," but reasoned that the potential injustice was outweighed by the "countervailing policies supporting this heightened threshold." *Id.* Finally, in *Kneip v. United Bank-Victoria*, 734 S.W.2d 130 (Tex. App.—Corpus Christi 1987), a Texas Court of Appeals held in a common law fraud case that "[w]e have previously dealt with and acknowledged that these consequential expenses concerning the litigation are some evidence of a pecuniary loss. However, we do not believe that attorney's fees

are properly assigned to the category of pecuniary losses." *Id.* at 134-35.

This precedent indicates that under Texas law, the attorneys fees incurred in bringing a lawsuit, where no additional pecuniary loss has been identified, do not establish the element of special damages required to support a claim of business disparagement. We accordingly vacate both the business disparagement injunction[2] against California Pools and the award of $152,000 in general damages to C.P. Interests.

B

California Pools contends that the district court abused its discretion in allowing C.P. Interests' trademark expert, attorney Alan D. Rosenthal, to testify outside the scope of his report and to offer legal conclusions on trademark issues in this case. C.P. Interests responds that California Pools failed to preserve this issue for appeal by not objecting contemporaneously with the disputed testimony.

We hold first that California Pools did not preserve this issue for appeal. Federal Rule of Evidence 103(a)(1) requires a "timely objection or motion to strike ... stating the specific ground of objection." During direct examination, California Pools twice objected on the grounds that the

---

[2] The jury finding that California Pools disparaged C.P. Interests notwithstanding, it is necessary to vacate the injunction as well as the damages award. The element of "special damages" is a part of the business disparagement cause of action. *See Hurlbut*, 749 S.W.2d at 766. Because C.P. Interests has not made out the elements of this claim, not brought any other cause of action upon which injunctive relief against the disparagement might be available, the exercise of the court's equitable powers is inappropriate. *See, e.g., System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1141-44(3d Cir. 1977) (holding that the issuance of a preliminary injunction was improper where the plaintiff failed to prove a likelihood of eventual success in the litigation because the plaintiff had not alleged special damages, a required element of the product disparagement cause of action under New Jersey law).

answer would call for or in fact offered a legal conclusion.[3]   On four separate occasions, however, California Pools failed to object on the grounds that the answer might have called for a legal conclusion.[4]  California Pools' failure to object to these four questions means that it has not satisfied

---

[3]Q [by C.P. Interests]: Do you have an opinion as to whether or not our client, C.P. Interests, Inc., and Lewis Wiebe and Dennis Alexander are the successors to all the rights in the California Pools mark as it's used here in Houston?

Mr. Cain:  Objection, Your Honor.  It calls for a legal conclusion.

The Court:  I will overrule the objection to the question of whether or not he has an opinion.

A [by Mr. Rosenthal]: Yes, I do have an opinion.

\*\*\*

Q: Now, why is it important to either focus on the geographic areas, the distinction between California and Houston?

A [by Mr. Rosenthal]: Because of common law, absent a federal registration or state registration, which can confer different rights after they're issued, but at common-law the rights and the trademark are geographically limited.  They only apply where the mark's been used.  It's my understanding that, for example, in this case, while the Defendants were using "California Pools" in California, they didn't make any use of "California Pools" outside California until even after Mr. Alexander had acquired the California Pools business here in Houston.  The two markets, California and the Houston area, are geographically remote and don't compete with each other in the sense of a customer from here in Houston deciding, if they want a swimming pool, they're going to call up a company in California to build a swimming pool for them.

Mr. Cain: Objection, Your Honor.  The answer was a legal conclusion and it goes well beyond the scope of his expert report, and I move to strike it.

The Court: [after seeing the relevant part of the report] All right.  The objection is overruled.

[4]Q [by C.P. Interests]: Is it your opinion that the trademark rights passed through in those transactions?

A [by Mr. Rosenthal]: Yes it is.

\*\*\*

-10-

the requirements of Rule 103,[5] and the issue has not been preserved for appeal.  *See Bailey v. Southern Pac. Transp. Co.*, 613 F.2d 1385, 1389 (5th Cir.), *cert. denied*, 449 U.S. 836, 101 S.Ct.

---

Q: Tell me why it is you believe the trademark rights transferred from Mr. Hays to Mr. Lewis and Mr. DeHart.

A: Basically, in each of these cases it was a transfer of the entire business, and there is a rule in trademark law that when you transfer a business in its entirety that it's presumed that the trademark rights are transferred as well.

***

Q: Okay.  Now, the defendants say that they own the trademark rights in this case and that Mr. Alexander is the one infringing and misusing their marks.  Do you agree with that?

A: Not here in the Houston area.

Q: What is your opinion as to who has the rights in the Houston area?

A: It is my opinion that the rights to the trademark "California Pools" in the Houston area are owned by the plaintiff.

Q: Why do you hold that opinion?

A: Because, basically, trademark law, rights of common-law, are gained by the first company to use the mark in a geographic area in connection with the goods or services that the mark is associated with.  And in this case it's very clear that the Plaintiff and the Plaintiff's predecessors in interest had used the mark "California Pools" here in the Houston area long before the Defendants were using the mark "California Pools" in the Houston area.  What's more, it's my understanding – I haven't seen it – based on the documents I that I have reviewed or the testimony that I have reviewed, I haven't seen anything to indicate that the Plaintiffs, when they adopted and chose the mark "California Pools" to begin with, that that was done based upon the desire to trade on the reputation of the Defendants.

[5] California Pools argues that its motion in limine to exclude Mr. Rosenthal's testimony, as well as its oral complaint to the court in the initial days of the trial, were enough to alert the court to the issue of legal conclusions in Mr. Rosenthal's testimony.  The motion in limine was overruled, however, and we have previously stated that "a party whose motion in limine has been overruled must object when the error he sought to prevent with his motion is about to occur at trial."  *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980).  Nor does the oral complaint rise to the level of specificity required to satisfy Rule 103(a)(1).

109 (1980) (holding that party's failure to object to the challenged evidence on four of the five occasions on which it was offered meant that the issue was waived on appeal).

Consequently, we review the admission of Mr. Rosenthal's testimony for plain error. *See United States v. Yamin*, 868 F.2d 130, 135 (5th Cir. 1989). California Pools argues that Mr. Rosenthal improperly offered legal conclusions in his testimony on the application of trademark law to this case. Federal Rule of Evidence 704(a) states that opinion testimony otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact; Federal Rule of Evidence 702 permits the district court to admit expert testimony that will assist the trier of fact in either understanding the evidence or determining a fact in issue. Neither rule, however, permits expert witnesses to offer conclusions of law. *See Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

To determine whether it was plain error to admit Mr. Rosenthal's testimony, we identify first what the disputed expert testimony is, then compare that testimony to the ultimate issues to be decided by the trier of fact, and finally decide the harm of any error. *See Askanse v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997); *Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988) (en banc), *cert. denied* 488 U.S. 1008 (1989). Here, Mr. Rosenthal testified to three basic points: succession to the rights in the "California Pools" mark, geographic remoteness, and ownership of the rights in the Houston area. On each of these points, Mr. Rosenthal's testimony was unequivocal))he testified that C.P. Interests has succeeded to the rights to the mark in Houston, and that C.P. Interests owns the rights to the mark in Houston and therefore was not infringing California Pools' rights.

As set forth in the special interrogatories, the relevant issues to be decided by the jury were:

Question 5: Did C.P. Interests prove from a preponderance of the evidence that in 1980 Jim

Hays transferred the trademark "California Pools" or a mark with the same continuing impression to Bill Lewis and Mike DeHart along with the goodwill of the business?

Question 6: Did C.P. Interests prove from a preponderance of the evidence that in 1981 Bill Lewis and Mike DeHart transferred the trademark "California Pools" or a mark with the same continuing commercial impression to Lewis Wiebe and Dennis Alexander along with the goodwill of the business?

Question 7: Did C.P. Interests prove from a preponderance of the evidence that Harris County, Texas, was an area remote from Defendant California Pools, Inc., its reputation and its natural right of expansion when the persons listed below used the trademark "California Pools" or a mark with the same continuing commercial impression at [a number of different times]?

Question 12: Has C.P. Interests proven by a preponderance of the evidence that Defendants infringed the trademark "California Pools" or a mark with the same continuing commercial impression in connection with the pool construction business in the Houston area?

Comparison of Mr. Rosenthal's testimony with the issues to be decided by the jury reveals a clear overlap. Mr. Rosenthal offered conclusive testimony on each of these issues) ) the transfer of rights (Questions 5 and 6), geographic remoteness (Question 7), and infringement (Question 12). Mr. Rosenthal's testimony, however, was only one part of a comprehensive case put forth by plaintiff C.P. Interests. In addition to Mr. Rosenthal, several other witnesses testified about the facts underlying the succession of rights, the ownership of rights, and geographic remoteness. Furthermore, the phrasing of the special interrogatories had the effect of discouraging a jury leap to the same conclusions advanced by Mr. Rosenthal: the transfer of rights questions were divided to reflect the historical series of events that would have to occur to effect a succession of rights, an approach not paralleled in the questioning of Mr. Rosenthal. Under such circumstances, we have noted that "[w]here an expert's trial testimony included the bases for the expert's conclusion, and the conclusion was supported by the overwhelming evidence,...Fifth Circuit case law supports a determination that there was not significant risk that the expert's testimony 'supplant[ed the] jury's

-13-

independent exercise of common sense.'" *United States v. $9,041,598.68 (Nine Million Forty One Thousand Five Hundred Ninety Eight Dollars and Sixty Eight Cents)*, 163 F.3d 238, 255 (5th Cir. 1998) (*quoting United States v. Willey*, 57 F.3d 1374, 1389 (5th Cir. 1995)); *see also Askanse*, 130 F.3d at 673 (considering whether the plaintiff's claim might be proved even without the inadmissible expert testimony). Given the overwhelming factual support in the record to buttress Mr. Rosenthal's testimony, we hold that any possible error in the admission of his testimony was harmless.

California Pools also argues that Mr. Rosenthal's testimony was improper because it went outside the scope of his expert report. We review the district court's decision to include Mr. Rosenthal's oral testimony for abuse of discretion. *See Johnson v. Ford Motor Co.*, 988 F.2d 573, 578 (5th Cir.1993). California Pools objected to Mr. Rosenthal's testimony three times during trial on the basis that the testimony was outside the scope of the expert report.[6] In none of these instances

---

[6]Q [by C.P. Interests]: And there are, really, two main transfers involved here. Is that right?

Mr. Cain: Objection, Your Honor. Now we're beyond the scope of the expert report.

The Court: Overruled.

\*\*\*

A [by Mr. Rosenthal]: ...The two markets, California and the Houston area, are geographically remote and don't compete with each other in the sense of a customer from here in Houston deciding, if they want a swimming pool, they're going to call up a company in California to build a swimming pool for them.

Mr. Cain: Objection, Your Honor. The answer was a legal conclusion and it goes well beyond the scope of his expert report, and I move to strike it.

\*\*\*

Q [by C.P. Interests, on redirect]: Okay. Now, let's just bring it right down to the specific case here, not garages and building cars but repairing and servicing swimming pools and then deciding to build some pools that you have been doing for 20 years. Do you consider that to be

-14-

did the district court abuse its discretion by admitting the testimony. The first two objections were to questions on subjects which were mentioned in the expert report)) specifically, transfers and geographic remoteness. The third objection was to a question asked on C.P. Interests' redirect, after California Pools had cross-examined Mr. Rosenthal on issues beyond the scope of the report. Thus, as the district court correctly ruled, C.P. Interests was no longer confined to the scope of the report, and the question was properly asked. *See, e.g,.., United States v. Zimeri-Safie*, 585 F.2d 1318, 1322 (5th Cir. 1978) (permitting on redirect a witness's potentially improper testimony on the grounds that the defense had earlier cross-examined the witness along the same lines). Accordingly, there was no abuse of discretion in admitting this testimony.

C

California Pools asserts that the district court erred in admitting oral testimony regarding the transfer of rights where the Best Evidence Rule required proof by a written document. C.P. Interests again responds that this issue has been waived. We agree.

As discussed above, Federal Rule of Evidence 103 requires a specific objection to be made contemporaneously with the disputed testimony. On the best evidence issue, the district court made this requirement explicit: when counsel for California Pools inquired, "Do you want me to have the [already-filed motion in] limine objection or do you want me to object every time?," the court responded, "When you think a question is asked that is not proper, object and I'll rule." But

---

some dramatic shift, that it's a totally different business?

Mr. Cain: Objection. This goes beyond the scope of his expert report with respect to how similar the pool construction and pool repair business is.

The Court: It's within the scope of your cross-examination. Overruled.

California Pools did not comply with this admonishment of the district court. Although best evidence objections were made during the examination of Mr. Alexander, California Pools was silent during the subsequent testimonies of Mr. Wiebe and Mr. Hays, both key witnesses in establishing the transfer of rights. The specific admonition of the court indicated that the court, as is its prerogative, sought to be alerted at every point at which the Best Evidence Rule was at issue. By failing to comply with Rule 103 and the specific admonishment of the district court, California Pools has failed to preserve the issue for appeal, and we review the court's decision to allow oral testimony on the transfer of rights for plain error. *See Yamin*, 868 F.2d at 135.

No such error is present here. Federal Rule of Evidence 1002 requires production of the original writing to prove the contents of that writing. Federal Rule of Evidence 1004 excuses this requirement where it can be shown that the original has been lost or destroyed, as long as unavailability is not the result of the proponent's bad faith. California Pools' best evidence argument fails, however, in that California Pools never made the threshold showing required by Rule 1002 that a writing at some point existed. While California Pools did allege the existence of such a writing, the issue was so contended that the district court presented the question to the jury as a special interrogatory (which the jury answered in the negative). Under such circumstances, we certainly cannot say that it was plain error to include oral testimony about evidence that may also at some point have been contained in a writing. *See, e.g., United States v. Howard*, 953 F.2d 610, 613 (11th Cir. 1992) (Best Evidence Rule presupposes the existence of an original).

D

California Pools next argues that the district court's jury instructions on "good faith adoption" and "tacking on" of trademark rights were erroneous. We review challenges to jury instructions for

-16-

abuse of discretion, *see United States v. Monroe*, 178 F.3d 304, 307 (5th Cir.1999), and will reverse

a judgment only if the charge as a whole creates a substantial doubt as to whether the jury has been

properly guided in its deliberations.[7] *See Batts v. Tow-Motor Forklift Co.*, 978 F.2d 1386, 1389 (5th

Cir.1992).

On the "good faith" issue, the court instructed the jury that "mere knowledge of defendant's

use of the mark does not defeat good faith, though it is a factor you may consider if you find that

plaintiff had knowledge of the time of its first use."   California Pools disagreed with this instruction

and suggested "if plaintiff had knowledge of defendant's prior use of the mark at the time of its

adoption, then plaintiff's adoption was not in good faith."  California Pools asserts that its proposed

jury instruction accurately reflects the *Tea Rose-Rectanus* doctrine set forth by the Supreme Court

in *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916) (Tea Rose)

and *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed 141 (1918).

These cases have given rise to the general proposition that "a senior user has exclusive rights to a

distinctive mark anywhere it was known prior to the adoption of the junior user and has enforceable

rights against any junior user who adopted the mark with knowledge of its senior use." *A.J. Canfield*

*Co. v. Honickman*, 808 F.2d 291, 295 n.4 (3d Cir. 1986).

California Pools is correct that many courts examining the good faith issue have held that, as

per the *Tea Rose-Rectanus* doctrine, a junior user's knowledge of a senior appropriator's use of a

mark is itself sufficient to defeat a claim of good faith.  *See, e.g., Yankee Spirits, Inc. v. Gasbarro*,

---

[7]California Pools made a timely objection to the proposed jury instructions pursuant to Fed.R.Civ.P. 51, which provides in pertinent part that "[a]t the close of evidence or at such earlier time during the trial as the court reasonably directs, and party may file written requests that the court instruct the jury on the law as set forth in the requests.  The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury."

-17-

1998 WL 428092, *11 (D.Mass. 1998). The Fifth Circuit, however, has not expressly joined this majority view, and our past precedent implies a test to the contrary) ) specifically, that knowledge of use is but one factor in a good faith inquiry. *See El Chico, Inc. v. El Chico Cafe*, 214 F.2d 721, 726 (5th Cir. 1954) (holding that knowledge of use is not dispositive in the absence of evidence of "an intent to benefit from the reputation or good will of the [senior user]."). This multi-factored test is the model for the one articulated in the district court's jury instruction. California Pools therefore has failed to demonstrate that the district court abused its discretion in issuing the good faith jury instruction.

Regarding the "tacking on" issue, California Pools contests the district court's use of the phrase "substantially related" in several interrogatories. California Pools argues that the correct language, as gleaned from *Big Blue v. IBM*, 19 U.S.P.Q.2d 1072, 1075 (Trademark Tr. & App. Bd. 1991), is "substantially identical") ) as in whether C.P. Interests had proved its rights to a mark that was used in connection with a business substantially identical to the pool construction business. We agree with California Pools that a review of case law reveals that "substantially identical" is the dominant terminology, though we are unable to find precedent establishing "substantially related" as a proper or improper approximation to the standard term. Assuming that the district court did err in its selection of "substantially related," and that California Pools properly objected to this wording at every appropriate juncture, we engage in a two-part analysis to determine whether the district court's error requires reversal. First, California Pools must demonstrate that the instruction as a whole creates a "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations"; second, California Pools must demonstrate that based upon the entire record, the instruction altered the outcome of the case. *Russell v. Plano Bank & Trust*, 130 F.3d 715, 719 (5th

Cir. 1997) (quoting *Bender v. Brumley*, 1 F.3d 271, 276 (5th Cir. 1993)). We find no indication on the record of such outcome-altering doubt, and California Pool's allegations in this regard are conclusory. While California Pools' arguments about the differences between the pool services and pool construction industries may have common-sense appeal, these arguments do not speak to whether there is an outcome-determinative difference between "substantially related" and "substantially identical." California Pools has therefore failed to meet its burden in challenging the jury instructions, and we hold that the district court did not abuse its discretion in issuing the "good faith" and "tacking on" instructions.

E

California Pools finally argues that evidence of C.P. Interests' use of the mark in Dallas was not relevant and that the court abused its discretion by admitting it. C.P. Interests responds that this issue was not preserved for appeal; we again agree. California Pools, although it did file a motion in limine on the issue, failed to object to any of the testimony on the Dallas use, thereby waiving the issue. *See Wilson v. Waggener*, 837 F.2d 220, 222 (5th Cir. 1988) (holding that a motion in limine is insufficient to preserve error in the admission of evidence where the contemporaneous objection requirement of Rule 103 has not been met).

Accordingly, we review the admission of this evidence for plain error. *See id.* We find none. California Pools' irrelevancy arguments are premised principally on the testimony of a witness who stated that he did not have any knowledge of a relationship between the Houston and Dallas predecessors of C.P. Interests. C.P. Interests, however, offered pleadings and statements to establish a connection between the Houston and Dallas businesses. Moreover, the witness's testimony did not foreclose the possibility of a relationship between the companies; it simply did not buttress C.P.

Interests' argument. California Pools in this sense appears to be confusing a sufficiency argument with the less stringent relevancy requirements of Federal Rule of Evidence 401.

California Pools secondarily argues that the evidence is irrelevant because the rule prohibiting the assignment in gross of trademarks prevents C.P. Interests from claiming priority to the Dallas use. It is true that assignment of a trademark without the goodwill it represents is invalid. *See Sugar Busters, LLC v. Brenan*, 177 F.3d 258, 265 (5th Cir. 1999) ("Plaintiff's purported service mark in 'Sugarbusters' is valid only if plaintiff also acquired the goodwill that accompanies the mark."). As C.P. Interests correctly points out, however, even assuming that the Dallas transfer was an invalid assignment in gross, the Dallas use evidence is still relevant to the question of why the name "California Pools" was selected for the new Houston business. There was no error in the admission of the evidence of the Dallas use.

### III

The judgment of the district court awarding $152,000 in the form of general damages to C.P. Interests and enjoining California Pools' business disparagement is VACATED. All other aspects of the judgment are AFFIRMED.