United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 12, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 05-60365
Summary Calendar

))))))))))))))))))))))))))))

WILLIAM HAND

       Plaintiff-Appellant,

   v.

UNUM PROVIDENT CORPORATION; THE PAUL REVERE LIFE INSURANCE
COMPANY

       Defendants-Appellees.

---

Appeals from the United States District Court
for the Southern District of Mississippi

No. 3:01-CV-0267

---

Before SMITH, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

    This is an appeal by an insured of several district court
orders following a jury trial that found that the arthritic
condition in the insured's hands that prevented him from
performing orthopedic surgery was not covered by the insured's
"own occupation" disability insurance policy. Because we find no
reversible error in either the district court's rulings or the

---

    [*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

jury's verdict, we AFFIRM.

## I. BACKGROUND

Plaintiff-Appellant Dr. William Hand ("Hand"), a Mississippi resident, practiced orthopedic surgery for approximately thirty years. In December 1992, Hand purchased an "own occupation" disability insurance policy ("the policy") from Defendant-Appellee Paul Revere Life Insurance Company, whose parent company is Defendant-Appellee UNUM Provident Corporation (collectively, "Defendants"). Pursuant to the policy, Defendants were obligated to pay Hand $6000 a month should he ever become totally disabled. As defined by the policy,

> **"Total Disability"** means that because of Injury or Sickness:
>
> a. You are unable to perform the important duties of Your Occupation; and
>
> b. You are receiving Physician's Care.

"Your Occupation" is defined in the policy as "the occupation or occupations in which You are regularly engaged at the time Disability begins."

Hand subsequently developed severe arthritis in his hands, which he contends resulted in the total and permanent loss of his ability to perform orthopedic surgery by January 1, 1999. Hand, however, did not seek treatment from a doctor at that time. Instead, he sought and obtained a series of jobs that did not require him to perform orthopedic surgery. It was not until

2

April 18, 2000, that Hand visited Dr. Aubrey Lucas ("Dr. Lucas") for evaluation of his arthritis. Dr. Lucas determined that Hand's arthritis prevented him from performing orthopedic surgery, and Hand then filed a claim for disability benefits with Defendants.

Defendants conducted an investigation into Hand's claim, and on September 22, 2000, issued a letter denying Hand's request for disability benefits. Defendants' stated reason for denial was that, as of April 18, 2000, Hand's occupation was that of a non-operating orthopedic physician, not an orthopedic surgeon. Therefore, the arthritis that kept Hand from performing orthopedic surgery did not render Hand unable to perform the important duties of his occupation.

## II. PROCEDURAL HISTORY

Dissatisfied with this result, Hand brought suit in Mississippi state court, claiming that Defendants breached the insurance contract and acted in bad faith in denying his claim. He requested both compensatory and punitive damages. Defendants removed the case to federal court on the basis of diversity. See 28 U.S.C. § 1332 (1993 & Supp. 2006). The parties filed motions for summary judgment shortly before trial, and concluded briefing on the motions three days before the final pretrial conference. The district court denied both motions, and the case proceeded to trial before a jury.

3

Following several days of testimony, the court presented the jury with the following two interrogatories:

> 1. Do you find that the plaintiff, William Hand, is totally disabled to perform the important duties of the occupation of Orthopedic Surgeon?
>
> . . .
>
> 2. If you answered the immediately preceding interrogatory "Yes," what is the date on which the plaintiff was totally disabled?

With respect to the first interrogatory, the trial court specifically instructed the jurors that they were not to consider the Physician's Care clause in reaching their decision.[1] The jury answered "Yes" to the first interrogatory, and "April 18, 2000" to the second interrogatory.

Based on these responses, the trial court found that Defendants were not liable under the policy. Because it was undisputed that Hand had not performed orthopedic surgery since October 1998, the trial court reasoned that Hand's occupation as of April 18, 2000, did not require him to perform orthopedic surgery. Therefore, Hand's arthritis did not render him totally disabled from performing the important duties of his occupation. Accordingly, the court entered judgment for Defendants, and Hand now appeals.

## III. DISCUSSION

---

[1] The Physician's Care clause is the second prong of the definition of "Total Disability," which requires the insured to be under a doctor's care before he is considered totally disabled under the policy.

4

Hand brings eleven points of error in this appeal. The court will address Hand's challenges to the trial court's summary judgment rulings, the trial court's interpretation of the policy, the admission of certain evidence and argument, the jury instructions, and the jury's findings. Because of our disposition of the above issues, we need not address the remaining points of error brought by Hand.

A.    Summary Judgment Rulings

Hand first claims that the district court erred in denying his motion for partial summary judgment. However, orders denying summary judgment are not reviewable on appeal where a final judgment adverse to the movant has been rendered on the basis of a subsequent full trial on the merits. Johnson v. Sawyer, 120 F.3d 1307, 1316 (5th Cir. 1997); Black v. J.I. Case Co., 22 F.3d 568, 569-70 (5th Cir. 1994). Because Hand received an adverse final judgment after a jury trial on the merits of his case, he may not now appeal the denial of his motion for partial summary judgment. Thus, the court will not consider whether Hand's motion was properly denied.

In a related argument, Hand asserts that by denying Defendants' motion for summary judgment, which asserted that the policy was unambiguous, the trial court impliedly found that the policy was ambiguous, which Hand claims should result in a verdict in his favor. Hand's argument is misplaced. Even in the absence of a factual dispute, "a district court has the power to

'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'" Black, 22 F.3d at 572 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Further, the grant or denial of a partial summary judgment is interlocutory in nature and may be revised by the district court at any time. See Streber v. Hunter, 221 F.3d 701, 737 (5th Cir. 2000); see also F.D.I.C. v. Massingill, 24 F.3d 768, 774 (5th Cir. 1994) (noting a partial summary judgment order has no res judicata effect). Thus, the trial court's denial of Defendants' motion for summary judgment did not necessarily mean that the trial court found the policy ambiguous, nor did it bind the trial court to a finding in favor of Hand. Therefore, the trial court's rulings on the summary judgment motions were not erroneous.

B.   Contract Interpretation

Hand next faults the trial court's interpretation of the policy, specifically, the trial court's interpretation of "Your Occupation" and the Presumptive Total Disability Benefits clause. We review the district court's interpretation of an insurance contract de novo. Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 515 (5th Cir. 2005).

Hand first claims that the trial court erred in not finding the term "Your Occupation" ambiguous. As noted above, "Your Occupation" is defined as "the occupation or occupations in which [the insured is] regularly engaged at the time Disability

6

begins." Defendants claim "Disability" must be a "Total Disability" before benefits are due, while Hand asserts that his "Disability" began at the onset of his arthritic condition. Thus, Hand argues that "Your Occupation" is ambiguous, and must be construed in his favor. As the parties agree that Mississippi law applies to this case, the court turns to Mississippi case law for its principles of contract interpretation.

Pursuant to Mississippi law, when a contract is clear and unambiguous as to its wording, its meaning and effect are matters of law. Farmland Mut. Ins. Co v. Scruggs, 886 So. 2d 714, 717 (Miss. 2004); U.S. Fid. & Guar. Co. v. Omnibank, 812 So. 2d 196, 198-99 (Miss. 2002). When interpreting a contract, the court's focus is upon the objective facts, that is, the language of the contract. Tupelo Redev. Agency v. Abernathy, 913 So. 2d 278, 284 (Miss. 2005); Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So. 2d 107, 110-11 (Miss. 2005). In the case of insurance contracts, ambiguous terms are to be construed most strongly against the insurance company who prepared the contract. Farmland, 886 So. 2d at 717.

The conflict over the interpretation of "Your Occupation" in this case stems from differing beliefs as to the meaning of "Disability." In interpreting an insurance policy, the court is to look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result. J & W

7

<u>Foods Corp. v. State Farm Mut. Auto. Ins. Co.</u>, 723 So. 2d 550, 552 (Miss. 1998).  Section 1.13 of the policy defines the term "Disability" as "continuing periods of Total Disability, Residual Disability and/or Recovery."  As Residual Disability and Recovery are not at issue in this case, Disability must mean Total Disability.  Therefore, "Your Occupation" is defined, for purposes of Hand's situation, as the occupation in which he was regularly engaged at the time he became totally disabled.  Because the policy is clear and unambiguous as to the definition of "Your Occupation," the trial court did not err in its interpretation of "Your Occupation."[2]

Hand next argues that the trial court erred in denying his motion for judgment as a matter of law on his claim for Presumptive Total Disability Benefits (the PTDB provision).  Pursuant to the PTDB provision,

> If Injury or Sickness causes You to totally and irrevocably lose . . .
>
> > d.  Use of both hands . . .
>
> We will presume You to be Totally Disabled as long as such loss continues and whether or not You are able to work or require Physician's Care.

Hand asserts that simply losing the ability to perform orthopedic

---

[2]  Because the interpretation of "Your Occupation" is clear and unambiguous, this court need not consider Hand's argument that extrinsic evidence, namely the claims manual, defined Disability differently.  <u>See</u> <u>Facilities</u>, 908 So. 2d at 111 (holding that only if the contract is unclear or ambiguous may a court go beyond the text of the contract to determine the parties' true intent).

surgery constitutes the loss of use of both hands under the PTDB provision.  Alternatively, Hand claims the policy is ambiguous and must be construed in his favor.

Again, when interpreting an insurance policy, the court is to "give operative effect to every provision . . . ."  J & W Foods, 723 So. 2d at 552.  If loss of use in the PTDB provision means loss of use only for purposes of the insured's ability to work, as suggested by Hand, then the phrase "whether or not You are able to work" would be superfluous.  Thus, the trial court was correct in its determination that loss of use for purposes of the PTDB clause required more than loss of the ability to work.  Therefore, the trial court did not err in concluding that the PTDB provision did not provide benefits to Hand.

## C.  Trial Rulings

Hand also takes issue with several rulings of the district court during trial that he claims prejudiced his case.  First, Hand asserts that the fact that the trial court waited until after both sides had rested to decide that the policy was unambiguous harmed the presentation of his case because he had focused on ambiguity.  Hand, however, has not provided this court with any citations to the record, evidence, or specific descriptions of how the trial court's actions in this case prejudiced his trial presentation.  A district court has the inherent power to manage and control its own docket in order to achieve the orderly and expeditious disposition of cases.  See

9

United States v. Colomb, 419 F.3d 292, 299 (5th Cir. 2005); Woodson v. Surgitek, Inc., 57 F.3d 1406, 1417 (5th Cir. 1995). Hand's failure to identify specific prejudice gives this court no reason to find the trial court's actions improper.

Hand next argues that the trial court erred in permitting Defendants to present evidence that Hand had stated in several job applications in 1998 and 1999 that he was able to perform surgery. Hand claims this information was not known to Defendants at the time they denied his claim and that, under Mississippi law, the fact finder may only consider the reasons for denial given by the insurer at the time of the denial, relying on Sobley v. Southern National Gas Company, 210 F.3d 561, 564 (5th Cir. 2000).

We review a trial court's evidentiary rulings for an abuse of discretion. Gomez v. St. Jude Med. Daig Div., Inc., 442 F.3d 919, 927 (5th Cir. 2006); Perez v. Tex. Dep't of Criminal Justice, 395 F.3d 206, 210 (5th Cir. 2004), cert. denied, 126 S. Ct. 545 (2005). An erroneous evidentiary ruling is reversible error only if it affects a party's substantial rights. Perez, 395 F.3d at 210. Under this standard, the trial court's actions do not constitute reversible error. As stated in Sobley,

> Under Mississippi law, an insurer may rely on any exclusion in the policy to show that no coverage existed, whether or not that exclusion was the stated basis for denial. However, once coverage is established, a court should evaluate whether there was an arguable basis for denial of coverage based solely on the reasons for denial of coverage given to the insured by the insurance

10

company.

210 F.3d at 564. Hand did not establish coverage in this case; thus, the trial court did not need to undertake the second step of the analysis and consider whether Defendants had an arguable basis for denial, in which case Defendants' evidence might have been inadmissible. Further, Hand claimed throughout the case that he had been disabled as early as 1998. Defendants were entitled to present evidence in rebuttal that Hand was not disabled from performing surgery. Therefore, the trial court did not commit reversible error by refusing to exclude Defendants' evidence.

Hand next asserts that his due process rights under the United States Constitution were violated when he was not permitted to discuss the Physician's Care clause or Defendants' internal procedures in his closing argument. However, the Physician's Care clause and Defendants' internal procedures were irrelevant to the ultimate jury issues, which dealt with if and when Hand became disabled from performing orthopedic surgery. Thus, the trial court's decision to exclude such arguments was neither a due process violation nor reversible error. There is likewise no merit to Hand's claim that he was harmed when the court interrupted his closing argument after he referenced the Physician's Care clause. Therefore, Hand has not shown that the trial court's limitations on closing arguments violated his due process rights.

D.   Jury Instructions

Hand complains that the jury instructions were contradictory, incomplete, and unnecessary.  Challenges to jury instructions are reviewed under an abuse of discretion standard. Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 179 (5th Cir. 2005).  A judgment should be reversed "only if the charge as a whole creates a substantial doubt as to whether the jury has been properly guided in its deliberations."  C. P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d 690, 700 (5th Cir. 2001); see also Int'l Ins. Co v. RSR Corp., 426 F.3d 281, 291 (5th Cir. 2005) (stating that "[g]reat latitude" is shown to the trial court with respect to jury instructions).

Hand asserts the instructions were contradictory because the trial court told the jury not to consider the policy in reaching its decision, yet also told the jury to consider "all the evidence," which happened to include the policy.  The court has reviewed the instructions in question and finds that they were not so confusing as to cause "substantial doubt" that the jury was properly guided in its deliberations.  See C. P. Interests, 238 F.3d at 700.  While in general, the jury was told to consider all of the evidence, the trial court specifically emphasized that the jury was not to consider the policy.  This court presumes that the jury heard, understood, and followed the trial court's instructions.  See United States v. Bernard, 299 F.3d 467, 476 (5th Cir. 2002).  Therefore, the trial court did not abuse its

12

discretion in instructing the jury as it did with respect to consideration of the policy.

Hand also claims the instructions were incomplete because they did not provide the jury with a definition of "totally disabled" or the "important duties of an orthopedic surgeon."  As pointed out by Defendants, however, the trial court did instruct the jury as follows:

> I have provided to you the definition of total disability which means that in order for one to be totally disabled within the meaning of the policy, it is not necessary that he be wholly incapacitated to perform any duty incident to his occupation, but if the insured is prevented by his injury or illness from doing any substantial acts required of him, or his physical condition is such that in order to perfect a cure or prolong life, he ceases his work, he is totally disabled within the meaning of the policy.

Hand has not demonstrated how such definition was insufficient or an abuse of discretion.  Therefore, again, there is no cause for reversal.

Finally, Hand asserts that the first interrogatory--whether Hand was totally disabled as an orthopedic surgeon--was unnecessary because it was undisputed that he was totally disabled.  The instruction, however, did not harm Hand, as the jury answered the interrogatory "Yes."  Any assertion by Hand that the jury was confused by this appears to be speculation and not grounds for reversal.  Thus, in sum, the trial court did not abuse its discretion in formulating the jury instructions in this case, and, therefore, there is no reversible error.

13

E.    Jury's Findings

Hand claims the jury's finding that he was not totally disabled until April 18, 2000, is against the great weight of the evidence.  In evaluating the sufficiency of the evidence to support a jury's verdict, we view all evidence and draw all inferences in the light most favorable to the verdict.  Bryant v. Compass Group USA, Inc., 413 F.3d 471, 475 (5th Cir. 2005) (noting that the jury's verdict is afforded great deference), cert. denied, 126 S. Ct. 1027 (2006).  The court must determine whether the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict.  Am. Home Assurance Co. v. United Space Alliance, L.L.C., 378 F.3d 482, 487 (5th Cir. 2004).  The verdict must stand unless there is a lack of substantial evidence, viewed in the light most favorable to the successful party, to support the verdict.  Id.

Hand testified that he was totally disabled beginning January 1, 1999; however, Hand presented no medical evidence of his disability until April 18, 2000, when he was diagnosed by Dr. Lucas.  Dr. Lucas stated that Hand had been disabled since January 1, 1999, but also stated that the date was based in large part upon Hand's medical history in which Hand claimed he had been disabled since January 1, 1999.  Further, Defendants have not conceded that Hand was disabled as early as January 1, 1999,

14

as is contended by Hand. Indeed, Defendants presented evidence that Hand's job applications in 1998 and 1999 contained no mention of his disability. Given the conflicting evidence and the absence of any medical evidence of a disability in 1999, the jury was entitled to find that Hand became totally disabled on April 18, 2000. Thus, the jury's verdict is not against the great weight of evidence, and there is no cause for reversal on this count.

## F. The Remaining Issues

Because of the above rulings, the court finds it unnecessary to address Hand's remaining arguments in great detail.

Given the trial court's finding that the policy did not cover Hand's arthritis, there was no harm in dismissing Hand's bad faith and punitive damages claims, as a finding of coverage is required before an insured may obtain punitive damages for bad faith practices. Sobley, 210 F.3d at 564. For the same reason, there was also no reversible error in the trial court's decision to strike Hand's expert, who was to be presented during the punitive damages phase.

Hand's argument that the Physician's Care clause is unenforceable under Mississippi law is likewise mooted by the jury's findings. Application of the Physician's Care clause would have resulted in a finding of total disability on April 18, 2000, which is the same date the jury found Hand became totally disabled from performing the important duties of an orthopedic

15

surgeon.  Therefore, the Physician's Care clause has no impact on the result of this case.

Hand also asserts that the trial court's decision effected a forfeiture or invalid modification of his policy.  This argument is unavailing, as the trial court simply interpreted the policy as written.  Hand's disagreement with that interpretation does not mean that the court modified the policy or caused Hand to forfeit the policy.  Thus, the court concludes there are no grounds for reversing the trial court's decision on the basis of forfeiture or modification.

Finally, to the extent Hand incorporates arguments made in his trial court briefing but not in his briefing before this court, we consider those arguments abandoned.  See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993) (stating that arguments must be briefed to be preserved).


**IV. CONCLUSION**

For the reasons above, we AFFIRM the judgment of the district court.

AFFIRMED.