ORDER ON REHEARING

Before DeMOSS, STEWART and CLEMENT, Circuit Judges.
EDITH BROWN CLEMENT, Circuit Judge:
Having duly considered the petition for rehearing and response, we hereby substitute the following opinion for the opinion issued on January 5, 2005.
This case presents numerous questions arising from a seaman’s suit against his employer to recover damages for an injury allegedly sustained while aboard the employer’s vessel. Following a jury trial, the seaman was awarded damages for his maintenance and cure and Jones Act negligence claims. The employer appeals, contending that the jury erred when it found that the seaman had not willfully concealed his prior back injuries, and that the employer had been unreasonable in withholding maintenance and cure benefits. The employer also argues that the district court improperly instructed the jury regarding special damages, and that the seaman improperly invoked the Golden Rule during closing arguments.
We agree with the employer regarding willful concealment, and accordingly vacate the award for maintenance and cure. On the issues of the jury instructions regarding the inconsistent verdict and the invocation of the Golden Rule, we hold in Brown’s favor and affirm the decisions of the district court.
I. FACTS AND PROCEEDINGS
Rickey Brown injured his back in August 1998 while lifting a sack of corn. Brown was treated at an emergency room and issued a wheelchair and walker. Brown told his treating physician, Dr. Walter Johnston, that he heard a “pop” in his back during the accident.
Ten months later, on June 29, 1999, Brown applied to work as a seaman for LeTourneau, Inc. As part of the application process, Brown filled out LeTourneau’s medical questionnaire. Brown checked “No” when asked whether he had ever suffered from “Back Trouble.” Based in part on this representation, LeTourneau hired Brown. In late May 2000, while working for LeTourneau, Brown alleged that he injured his back. Brown was again treated by Dr. Johnston. After the accident, Brown was terminated from LeTourneau for falsely reporting an on-the-job accident, filing a false accident claim, and failing to disclose his 1998 back injury on LeTourneau’s medical questionnaire.
On August 15, 2000, two months after being fired by LeTourneau, Brown applied to work as a floorhand for Parker Drilling Offshore Corporation (“Parker Drilling”). On Parker Drilling’s medical questionnaire, Brown checked “No” when asked whether he had “Past or Present Back and *170 Neck Trouble.”[1] Based in part on this representation, Parker Drilling hired Brown.
On April-20, 2001, Brown reported to his supervisor that he felt back pain while pulling slips on the rotary table aboard the Parker Drilling rig. Brown was sent off the rig floor to complete a “Preliminary Incident/Investigation Report.” The . report stated: “While tripping pipe out of hole, I felt a pain in my lower left back when I pulled the slips out of the rotary table.”[2] Brown later explained that the master bushings came up and then popped back down, causing the slip he was holding, which was attached to the master bushings in the rotary table, to suddenly jerk him. During its accident investigation, Parker Drilling came to believe that Brown’s back injury had not been sustained aboard the vessel, and that Brown had willfully concealed his prior back injuries. Based upon these beliefs, Parker Drilling withheld payment of Brown’s maintenance and cure benefits.
Brown sued Parker Drilling for (1) negligence under the Jones Act, (2) unseaworthiness under general maritime law, (3) retaliatory discharge, (4) maintenance and cure benefits, and (5) compensatory damages resulting from Parker Drilling’s failure to pay such benefits. Parker Drilling countered that Brown was not entitled to maintenance and cure on the ground that he willfully concealed his past back injuries, and that Brown was not entitled to compensatory damages because Parker Drilling withheld benefit payments in reliance upon a reasonable defense. The jury ultimately returned a verdict finding for Brown in part.[3] Specifically, the jury found that Brown was injured due to the negligence of Parker Drilling,[4] that Brown was entitled to maintenance and cure because he did not willfully conceal his medical condition, and that Brown was entitled to compensatory damages because Parker Drilling unreasonably withheld maintenance and cure benefits.
By Order and Reasons dated July 30, 2003, the district court denied Parker Drilling’s motion for judgment as a matter of law (“JMOL”) and, alternatively, for a new trial.[5] Fed.R.Civ.P. 50. The district court later entered judgment against Parker Drilling for $414,840, and Parker Drilling timely appealed.
II. DISCUSSION
A. THE McCORPEN DEFENSE
Parker Drilling contends on appeal that the jury committed clear error by finding that Brown had not willfully concealed his prior back injuries when he completed Parker Drilling’s medical questionnaire. We construe this assertion as an argument that the district judge erred in denying *171 Parker Drilling’s motion for JMOL.[6]
A Jones Act employer is entitled to investigate a seaman’s claim for maintenance and cure benefits. Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir.1987). An employer is allowed to rely on certain legal defenses to deny these claims. McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547 (5th Cir.1968). One such defense is that the injured seaman willfully concealed from his employer a preexisting medical condition. Id. In order to establish a McCorpen defense, an employer must show that
(1) the claimant intentionally misrepresented or concealed medical facts;
(2) the non-disclosed facts were material to the employer’s decision to hire the claimant; and
(3) a connection exists between the withheld information and the injury complained of in the lawsuit.
Id. at 548-49. Parker Drilling contends that the jury committed clear error by not finding that each one of these elements was established by a preponderance of the evidence. We review de novo the judge’s order denying Parker Drilling’s motion for JMOL.
(1) Intent to conceal
Parker’s medical questionnaire asked whether Brown had suffered “Past or Present Back and Neck Trouble.” Brown answered this question in the negative. Parker Drilling contends that this response constitutes an intentional concealment of a medical condition because Brown (1) had been treated for back injuries on two occasions prior to the time he completed Parker Drilling’s medical questionnaire; (2) had been fired from LeTourneau for falsely reporting an on-the-job accident, filing a false accident claim, and denying that he had suffered from prior “Back Trouble” on LeTourneau’s employment medical questionnaire; and (3) misstated during his deposition that he had not sought medical care while working at LeTourneau. These facts — which show that Brown had sustained back injuries prior to completing Parker Drilling’s medical questionnaire, that Brown knew at the time he completed the questionnaire that these injuries constituted “back trouble” in the eyes of a past employer, and that Brown habitually denied his prior injuries — were established by Parker Drilling at trial. The jury nonetheless found that Brown had not intended to conceal his medical condition from Parker Drilling, and the district judge upheld this finding.
Brown now offers two explanations for the jury’s finding that he did not intentionally conceal his medical condition. First, he alleges that the question at issue on the Parker Drilling medical questionnaire is compound. Second, he argues that he did not understand the definition of “trouble.” Both arguments fail.
a. Compound question
As stated supra, the question at issue on Parker Drilling’s medical questionnaire asked whether Brown had “Past or Present Back and Neck Trouble” (emphasis added). Brown points out that this question is compound, and argues that a prospective employee could answer it in the affirmative only if he had suffered from both back and neck trouble.[7]
*172 Brown’s argument is not well taken. Because Brown did not raise this point before the district court or the jury, it is waived on appeal. See, e.g., Greenberg v. Crossroads Sys., 364 F.3d 657, 669 (5th Cir.2004). The briefs cite no testimony to show that Brown in fact interpreted the question to be compound, and Brown points to none. The jury could not have rationally inferred that Brown did hot lie on the questionnaire because the question was compound, and the district court did not uphold the jury’s finding on this basis. Brown’s response to the question amounted to intentional concealment of his medical condition.
b. Brown did not know his injuries constituted “trouble”
To further support his claim that he did not intend to conceal his medical condition from Parker Drilling, Brown alleges that he did not understand that his back injuries constituted back “trouble.” He states that he instead interpreted “trouble” to indicate serious injuries such as a broken back or neck.
When questioned at trial about his appointments with Dr. Johnston that preceded his employment with Parker Drilling, Brown explained that he had been treated for a “sore back” and a “pulled muscle”:
Q. Were you having any type of back trouble when you filled out the Parker Application?
A. I just had that pulled muscle, you know. They scanned me about that right now, so I guess I had to say I had a back pulled muscle. It’s back troubles, they said.
Q. What did you think when you read on the application “Had you ever had back trouble,” what came to your mind?
A. Disc and all of that, you know, broke back, a disc, neck being broke or something, the injury is a real one instead of a pulled muscle.
Trial Tr. at 109 (emphases added).
Brown acknowledged on cross-examination, however, that he had been fired from his job at LeTourneau for his back trouble:
Q. Why were you fired from LeTourneau?
A. For my back trouble.
M at 118 (emphasis added).
This admission demonstrates that Brown recognized, only two months before he completed the Parker Drilling medical questionnaire, that his minor injuries, i.e., pulled muscles and back strains, rose to the level of “back trouble” in the eyes of a past employer. Nonetheless, the district court observed that Brown was “a former special- education student who exhibited a non-eonfrontational demeanor at trial [and] was subjected to rigorous cross-examination and ... was repeatedly accused by defense counsel of lying.” Because the jury may have discounted Brown’s trial testimony for these reasons, Brown’s characterization of his prior injuries as “trouble” on cross-examination, without more, may have been insufficient to show that Brown knew that he had “back trouble.”
Brown’s understanding of his prior injury as “trouble,” however, was necessarily established by the circumstances surrounding his termination from LeTour *173 neau. Brown was fired for answering “No” on LeTourneau’s medical questionnaire when asked whether he had suffered from “back trouble.” At trial, Brown testified to the following:
Q. And I believe that you had testified earlier that the reason they, at LeTourneau, got rid of you, didn’t want you to work there anymore, is because LeTourneau found out about your past; they found out about your lying on the application, or whatever, is that right?
A. Yes, sir.
Q. And the reason LeTourneau, Mr. Fant at LeTourneau came to you and said “Hey, we can’t have you working here,” is because he showed you the employment application where you checked off “No,” about prior back problems, right?
A. Yeah.
Q. And he said “I can’t have anybody working here like that who misrepresents the application,” right? He told you that?
A. Yes.
Trial Tr. at 115-16. Such testimony shows that Brown knew he had been fired from LeTourneau for denying that he had “back trouble,” and renders implausible Brown’s explanation that, two months later, he did not understand the definition of “trouble” on Parker Drilling’s medical questionnaire.
We disagree with the argument in the dissent on rehearing that this case turns on the jury’s impressions of Brown’s credibility. Judge Stewart’s dissent on rehearing quotes McCorpen’s requirement that a shipowner must “persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a matter of importance,” 396 F-.2d at 549, to support the proposition that whether Brown intentionally concealed his back problems was an issue of credibility, which should have been left to the fact-finder. The above-quoted language is in-apposite; it applies to a situation where the employer does not require a preemployment health questionnaire. The entire passage in McCorpen reads:
Where the shipowner does not require a pre-employment medical examination or interview, the rule is that a seaman must disclose a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance. If the shipowner is unable to persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a matter of importance, he will be liable for maintenance. He will be liable if it is found that there existed reasonable grounds for the seaman’s good-faith belief that he was fit for duty.
Id. at 548-49. This Court continued in McCorpen: “On the other hand, where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance' and cure.” Id. at 549.
In his order denying Parker Drilling’s motion for judgment as a matter of law, the district judge wrote:
[W]hether or not. the plaintiff intended to misrepresent or conceal material medical facts was a hotly disputed question of fact at trial. The plaintiff stated that because of the minor nature of the muscle pulls he had experienced in the past, he did not consider any prior back strains or muscle pulls to be “back injuries” when confronted with the question on the Parker employment application. He denied “intentionally concealing” any material medical information. It is ap *174 parent that the jury gave credence to his explanation and it rejected Parker’s McCorpen defense.
Brown v. Parker Drilling Offshore Corp., No. 02-1911, 2003 WL 21783315, *3, 2003 U.S. Dist. LEXIS 13560, at *10-11 (E.D.La. July 30, 2003).
However, Parker Drilling established as a matter of law that Brown knowingly concealed material medical information. While the dissent on rehearing argues that intentional concealment can never be a matter of law, we do not adopt this interpretation of McCorpen’s intentional concealment prong. Rather, we agree with the Court of Appeals for the Ninth Circuit that “[t]he ‘intentional concealment’ element does not require a finding of subjective intent.” Vitcovich v. Ocean Rover O.N., No. 94-35047, 106 F.3d 411, 1997 WL 21205, *3 (9th Cir. Jan. 14, 1997) (unpublished opinion). The Vitcovich court continued:
Rather, it refers to the rule that a seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the “intentional concealment” requirement.
Id. at *3 (citation omitted). See also Evans v. Blidberg Rothchild Co., 382 F.2d 637, 640 (4th Cir.1967) (reversing judgment for maintenance, holding that the seaman “made two misstatements of fact which materially affected his eligibility for employment with the shipowner” and finding “deliberate misrepresentation”).
The view that the intentional concealment prong of McCorpen is an essentially objective inquiry has also been adopted by courts in this circuit. For example, Caulfield v. Kathryn Rae Towing, 1989 A.M.C. 1769 (E.D.La.1989), involved similar facts and legal issues. In spite of the plaintiffs insistence “that a factual dispute exist[ed] regarding whether he concealed or misrepresented medical facts,” the district judge correctly concluded that the “plaintiff knew that the information on the application was not correct,” because he “suffered a previous on-the-job injury to his back .... ” Id. Finding that the plaintiff intentionally misrepresented his medical history, the district judge summarily dismissed the claim for maintenance and cure. See also Bud’s Boat Rental, Inc. v. Wiggins, No. 91-2317 c/w 91-3507, 1992 WL 211453, *2, 1992 U.S. Dist. LEXIS 13094, at *4 (E.D.La. Aug. 24, 1992) (finding that no genuine issue of material fact was in dispute because the claimant “plainly concealed his past history” of back trouble even though he denied having intentionally withheld information); In re L.S.K. Towing, Inc., No. 94-4134, 1995 WL 350039, 1995 U.S. Dist. LEXIS 7971 (E.D.La. June 6, 1995) (granting summary judgment on finding that claimant concealed medical information, even though the plaintiff argued that a factual dispute existed as to his intent to conceal the pertinent facts).
The language of McCorpen lends itself to the objective interpretation of intentional concealment:
[The] applicant’s medical history was solicited by the shipowner through a questionnaire. Thus, the issue for us is not whether McCorpen believed in good faith he was fit for duty but whether he was guilty of the kind of intentional concealment of a disabling illness that precludes an award of maintenance. Tested by this standard, his case is not so strong: In completing a form that was obviously designed to elicit information about past illnesses of importance, *175 appellant failed to reveal his [medical condition]....
McCorpen, 396 F.2d at 549.
As noted by other courts, the McCorpen test is less subjective, i.e., less reliant on determinations of a seaman’s credibility, than other Circuits’ comparable tests. The Court of Appeals for the Eighth Circuit, in adopting the McCorpen test, noted that it is less subjective than the Second Circuit’s test. Wactor v. Spartan Transp. Corp., 27 F.3d 347, 352 (8th Cir.1994) (citing Sammon v. Cent. Gulf S.S. Corp., 442 F.2d 1028, 1029 (2d Cir.1971)) (explaining that the Second Circuit, in Sammon, adopted a test allowing a seaman to “claim maintenance and cure for a related injury or illness if he held a good faith belief, at the time he answered the question, that the pre-existing condition or earlier injury was not relevant”). McCorpen’s intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination.
Following the dissent on rehearing’s reasoning in this case would eviscerate the McCorpen defense, which would give rise to undesirable consequences. Pulling slips on a drilling rig is demanding and potentially dangerous work. Employers need to be certain that each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employees. This is the purpose of the preemployment health questionnaire, and of the McCorpen defense. Seamen must not be allowed to blatantly misrepresent their medical history on questionnaires and then plead ignorance before a jury.
Parker Drilling established as a matter of law that Brown intentionally concealed his prior back injuries, and the district judge erred in failing to so find in his ruling on the motion for JMOL.
(2) Materiality
The second element of the McCorpen defense, materiality, was clearly established at trial. The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant’s physical ability to perform his job duties, renders the information material for the purpose of this analysis. Brown’s history of back injuries is the exact type of information sought by employers like Parker Drilling. Brown, by his own admission, realized that information about his back condition had been important to one of his past employers. Brown’s counterargument — that he could perform heavy labor tasks for his first few months on the job — is irrelevant: Parker Drilling based its hiring decision (at least, in part) upon whether applicants had “Past or Present Back and Neck Trouble,” not whether they could, on the date of their application, complete difficult manual labor tasks. Parker Drilling has established that Brown’s misrepresentation was material to its hiring decision.
(3) Causality
We now turn to whether Parker Drilling met its burden to establish causality, the third prong of the McCorpen test. “[C]ase law reflects that even an intentional misrepresentation of medical facts which would have been material to the employer’s hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained.” Howard v. A.S.W. Well Serv. Inc., No. 89-2455-L, 1991 WL 365060, *2, 1991 U.S. Dist. LEXIS 21156, at *4 (W.D.La. Dec. 5, 1991). We hold that Parker Drilling did demonstrate the existence of such a connection *176 between Brown’s preexisting injury and his injury giving rise to this lawsuit.[8]
The evidence established that Brown suffered a lumbar strain in 1998 and 2000, with possible disc herniation, at L-4/L-5 and L-5/S-1. Dr. Dona, Brown’s expert witness, acknowledged that Brown’s prior back strains were to the same lumbar-spine region as his current back problem. Brown argues that Parker Drilling has not established causality because there is no proof that he suffered a previous disc herniation, and points out that nowhere in the reports of Dr. Mímeles and Dr. Applebaum is there any indication that Brown’s herniated disc preexisted his employment with Parker Drilling. The dissent on rehearing echoes this argument, maintaining that “there was no evidence presented to conclusively show that Brown sustained the herniated disc prior to the incident at Parker.” This position is without merit because Parker Drilling need not prove that the prior injuries are the sole causes of the herniation. It need only show a causal relationship between the prior injuries and the herniation. “[Tjhere is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-emsting disability that was concealed and the disability incurred during the voyage.” Quiming v. Int’l Pac. Enters., Ltd., 773 F.Supp. 230, 236 (D.Haw.1990) (citing McCorpen, 396 F.2d at 549.) Because Brown’s injuries were to the same location of the lumbar spine, the causal link between the concealed information and the new injury was established at trial.
Courts in this Circuit have routinely found such a causal link in similar circumstances. In Weatherford v. Nabors Offshore Corp., No. 03-0478, 2004 WL 414948, 2004 U.S. Dist. LEXIS 3435 (E.D.La. March 3, 2004), the district court granted summary judgment for the defendant, holding that the claimant was not entitled to maintenance and cure as a matter of law, because “[wjhere plaintiff claims an injury in the exact same area of the back as was previously injured, the causal connection is clear.” Id. at *3, 2004 U.S. Dist. LEXIS 3435, at *7. See also Fox v. Plaquemines Parish Gov’t, No. 99-748, 1999 WL 1243065, **2-3, 1999 U.S. Dist. LEXIS 19544, at *7.(E.D.La. Dec. 17, 1999) (granting summary judgment against claimant on maintenance and cure claim, when defendant showed that the claimant’s prior and present back problems both involved lower back injuries involving the L5-S1 disc); Guillory v. Northbank Towing Corp., No. 92-0140, 1993 WL 721991, *3, 1993 U.S. Dist. LEXIS 21338, at *8 (W.D. La. June 25, 1993) (granting summary judgment for defendant, holding that plaintiffs maintenance and cure claim is “for the exact same area of the back, at the L4-L5 level .... Therefore, there clearly is a causal connection and materiality between and of that which was concealed and his present medical condition.”); Keys v. Halliburton Co., No. 88-1523, 1989 WL 54224, **3-4, 1989 U.S. Dist. LEXIS 5558, at *9-10 (E.D.La. May 17, 1989) (granting the defendant’s summary judgment motion on issue of its obligation to pay maintenance and cure *177 benefits to the plaintiff, holding that “both injuries at issue were medical injuries affecting the low back”).[9]
In sum, Parker Drilling mounted a successful McCorpen defense. It established Brown’s intent to conceal his medical condition, that the nondiselosed facts were material to its decision to hire Brown, and that a connection existed between the withheld information and the injury complained of in the lawsuit. We therefore reverse the district court’s decision denying Parker Drilling’s motion for JMOL on whether Brown is entitled to maintenance and cure benefits, which voids the jury’s determination of this issue.
(4) Parker Drilling’s withholding of maintenance and cure benefits
Parker Drilling contends that the jury clearly erred by finding that Brown acted unreasonably in withholding Brown’s maintenance and cure benefits. This Court has recognized that
there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman’s plight, he becomes liable for punitive damages and attorney’s fees as well.
Morales, 829 F.2d at 1358 (emphasis added).
Parker Drilling offers two explanations for its failure to pay maintenance and cure: (1) Brown willfully concealed his prior medical condition, and (2) Brown’s injury was not sustained on Parker Drilling’s vessel. The question before us is whether the judge erred in upholding the jury’s finding that Parker Drilling’s reliance on these explanations was unreasonable.[10]
*178 We hold that the judge erred in upholding the jury’s finding that it was unreasonable for Parker Drilling to withhold benefits because Parker Drilling’s refusal was based on a reasonable defense: that Brown had willfully concealed his medical condition. The jury could not rationally have determined that Parker Drilling was unreasonable in relying on this defense, so their finding constitutes clear error. Accordingly, we need not reach Parker Drilling’s second explanation for withholding benefits.

B. Does the Jones Act negligence verdict survive the McCorpen defense ?

Brown argues in his petition for rehearing that the panel’s decision improperly dismissed his Jones Act negligence claim based on the McCorpen defense. Parker Drilling argues in response that because Brown lied on the employment questionnaire, he was not eligible to sue for negligence under the Jones Act. Parker Drilling’s argument proceeds from the uncontroverted, premise that “[t]he employer-employee relationship is an absolute prerequisite to Jones Act liability.” Reed v. Iowa Marine & Repair Corp., 143 F.R.D. 648, 651 (E.D.La.1992) (citing Stamoulos v. Howland Panama S.A., 610 F.Supp. 454, 456 (E.D.La.1985)), rev’d on other grounds, 16 F.3d 82 (5th Cir.1994). If Brown was not in a valid employment relationship with Parker Drilling because of his misrepresentations on the medical questionnaire, he is not eligible to recover damages under the Jones Act, according to Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Rock, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766 (1929).
In Rock, the Supreme Court barred a railway worker from suing under the Federal Employers’ Liability Act (“FELA”) because he fraudulently substituted a stand-in for his preemployment physical exam. Jones Act cases follow cases under the FELA. See, e.g., Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 989 (9th Cir.1987). However, the Supreme Court has effectively overruled Rock. In Still v. Norfolk & Western Railway Co., the Supreme Cqurt clarified that even an employee who obtains his employment through fraud is considered an employee for purposes of the Jones Act. 368 U.S. 35, 44-46, 82 S.Ct.. 148, 7 L.Ed.2d 103 (1961) (holding that even “employees who become such through other kinds of fraud, although possibly subject to termination through rescission of the contract of employment, must be recognized for purposes of suits under the” FELA, and thus the Jones Act); see also Reed, 143 F.R.D. at 651 (“[T]he Supreme Court has effectively foreclosed any argument that misrepresentations in an application for employment might void the necessary employment relation.”).
Notwithstanding Brown’s misrepresentations on the health questionnaire, he was in an employment relationship with Parker Drilling for purposes of a Jones Act negligence claim. See, e.g., Omar, 813 F.2d at 989; Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 529-31 (9th Cir.1962).
Because the Jones Act negligence verdict is viable, we must now consider Parker Drilling’s arguments that the district court abused its discretion when it charged the jury to reconcile its inconsistent verdict and that Brown’s counsel’s invocation of the Golden Rule argument tainted the jury verdict such that a new trial is warranted.

C. Did the district court abuse its discretion when it charged the jury to reconcile its inconsistent verdict?

The jury’s verdict for Jones Act negligence was inconsistent in that it awarded Brown special damages but not *179 general damages.[11] The judge immediately instructed the jury to remedy this error, explaining that “if you decide that future medical expenses are going to be incurred as a result of that accident, you must award something for pain and suffering.” Parker Drilling argued in its motion for judgment as a matter of law and, alternatively, for a new trial, that the district court erroneously charged the jury on how to reconcile its inconsistent verdict. The district court denied the motion, but did grant Parker Drilling’s motion for remittitur and entered judgment against Parker Drilling for $414,840. Parker Drilling renewed its objection to the district court’s instructions to the jury on appeal.
Challenges to jury instructions are reviewed for abuse of discretion. C.P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d 690, 700 (5th Cir.2001). A judgment should be reversed “only if the charge as a whole creates a substantial doubt as to whether the jury has been properly guided in its deliberations.” Id.
Parker Drilling contends that the district court’s instruction to reconcile the jury’s inconsistent verdict constituted an abuse of discretion. Specifically, Parker Drilling argues that the district court’s “instruction [to redeliberate] essentially abrogated the jury’s stated will and intent” to reconsider both special and general damages. Parker Drilling relies on two issues regarding the quantum of the award in attempting to show that the district judge’s instruction abrogated the jury’s intent to recalculate special damages during its redeliberation.
First, Parker Drilling asks this Court to consider a statement by the jury on a questionnaire form separate from the verdict form that it “wanted to award [Brown] $425,000.” During redeliberation following the judge’s instructions, the jury increased its award to $525,000. Second, Parker Drilling argues that the fact that the jury did not adopt in toto one of the parties’ economic experts’ calculations of damages is evidence that it had derived its $425,000 award from a consideration of the totality of the evidence. Had the jury been instructed to reconsider all special and general damages, argues Parker Drilling, it could have readjusted the entire verdict to award something for general damages but to stay within the $425,000 it originally wanted to award.
These arguments fail because the initial figure on the questionnaire was calculated during the jury’s original deliberation, when the jury was apparently unaware of its legal obligation to award general , damages once it had awarded special damages. That the jury gave a higher award after receiving proper instruction on the law is not evidence that the district judge abrogated the jury’s intent. The district judge’s instruction did not prohibit the jury from making any adjustments to the verdict it wished, provided it remedied the inconsistency. The jury was free to readjust its award to total $425,000, had it so desired.
Parker Drilling’s argument regarding the district court’s instruction on redeliberation fails because the district court instructed the jury that “if’ it awarded special damages, then it must award general damages. Further, the judge offered the jury a new, blank set of interrogatories to complete during its redeliberation and instructed the jury to “look at the instruc *180 tions,” which expressly stated that general damages must be awarded if special damages are awarded. It was clear to the jury that it was free to reconsider both special and general damages. It is settled law' in this Circuit that “mere resubmission does not necessarily coerce a verdict.” Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258, 1260 (5th Cir.1988). Because the district judge did not abuse his discretion, we affirm the district court’s denial of a new trial on this issue.

D. Did the invocation of the G'olden Rule by Brown’s counsel taint the jury verdict such that a new trial is warranted?

During closing arguments, Brown’s counsel remarked to the jury:
This is an emotional injury. This twenty-three year old needs a back fusion. He will go through pain and suffering. He will go through emotional issues, you can fairly compensate him for that. We’re not asking for sympathy here. I want you to close your eyes when you go in the back, please, and put yourself on a rig as a twenty-one year old making $87,000 a year.
Parker Drilling objected that counsel’s invocation of the “Golden Rule,” ie., asking the jurors to stand in the shoes of a party, was improper. The district court sustained the objection, and later instructed the jury to “not let bias, prejudice or sympathy play any part in your deliberations.” Parker Drilling did not object to this instruction or request that the district court specifically instruct the jury to disregard plaintiff counsel’s invocation of the Golden Rule. Parker Drilling contends on appeal that the Court should order a new trial on the ground that Brown’s counsel improperly invoked the Golden Rule during its closing argument.
We review the district judge’s actions surrounding Brown’s counsel’s invocation of the Golden Rule for abuse of discretion. Har-Pen Truck Lines, Inc. v. Mills, 378 F.2d 705, 715 (5th Cir.1967). A plea to the jury members to “put themselves in the shoes of the plaintiff and do unto him as they would have done unto them under similar circumstances ... [is] improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than the evidence.” Ivy v. Sec. Barge Lines, Inc., 585 F.2d 732, 741 (5th Cir.1978). Even if counsel does not explicitly invoke the Golden Rule but merely invites the jury to place themselves in the position of the plaintiff, the result is effectively the same and the risk of taint is no different. Whitehead v. Food Max of Miss. Inc., 163 F.3d 265, 278 (5th Cir.1998). Any reasonable interpretation of the language used by Brown’s counsel indicates that the Golden Rule was invoked.
Even if a party does invoke the Golden Rule, however, a new trial is warranted only if the opposing party shows that it was sufficiently prejudiced considering all the facts and circumstances of the case. United States v. Jefferson, 258 F.3d 405, 412 (5th Cir.2001). Parker Drilling claims that the jury’s deliberations were tainted by the district judge’s failure to expressly admonish Brown’s counsel for employing the Golden Rule. To support this claim, Parker Drilling quotes this Court’s statement in Loose v. Offshore Navigation, Inc. that “[t]he use of such a ‘Golden Rule’ argument so taints a verdict as to be grounds for a new trial.” 670 F.2d 493, 496 (5th Cir.1982). The trial judge in Loose, however, had overruled the objection to counsel’s use of the Golden Rule. Id. Mqreover, this Court in Loose further underscored that “[t]he invocation of the Golden Rule does not create immut *181 able error. The trial judge may, by appropriate instruction, salve the suit.” Id. at 497; see also Har-Pen, 378 F.2d at 714 (“The best that can be done when the suggestion is made is for the court to indicate ... the legal impropriety of the notion.”); Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1083 (8th Cir.2000) (concluding that because counsel did not refer to the improper hypothetical after the objection and because the trial court instructed the jury on its proper role, the complaining party was not prejudiced).
Parker Drilling’s objection was sustained, Brown’s counsel immediately abandoned this line of argument, and the district court expressly instructed the jury not to sympathize with the plaintiff. Parker Drilling has failed to establish that it was sufficiently prejudiced by Brown’s invocation of the Golden Rule, and a new trial is not warranted.
III. CONCLUSION
Because the district judge’s denial of the motion for JMOL regarding the maintenance and cure claims was erroneous, we hereby vacate the jury verdict as to the maintenance and cure award.
The prior majority opinion dismissing Brown’s Jones Act negligence award was erroneous; accordingly, that award is REINSTATED. The district court’s denial of the motion for a new trial on the bases of erroneous jury instructions regarding reconciling the inconsistent verdict and Brown’s counsel’s invocation of the Golden Rule, is AFFIRMED.

. The form stated above Brown's signature: FAILURE TO ANSWER TRUTHFULLY MAY RESULT IN THE FORFEITURE OF WORKER’S COMP BENEFITS. I have read the above statements and the answers to the above questions and I certify them to be true and correct.

. " The form stated that the incident description was “to be filled out by injured employee.” Brown testified, however, that the safety representative, Tiger Megison, filled out the form in Brown's presence.

. The jury, however, agreed with Parker Drilling on the claims of unseaworthiness and retaliatory discharge.

. The jury found that, due to Brown’s contributory negligence, Parker Drilling was only 75% liable for Brown’s injuries.

. The district court, however, did grant Parker Drilling’s motion for remittitur, reducing the jury's award for future medical expenses from $150,000 to $100,000.

. This Court may, in its discretion, "liberally construe briefs in determining issues presented for review” in furtherance of the ends of justice. SEC v. Recile, 10 F.3d 1093, 1096 (5th Cir.1993); see also McAllister v. Resolution Trust Corp., 201 F.3d 570, 577 n. 7 (5th Cir.2000).

. While the question is compound, the manner in which it is set forth on the question *172 naire, and Brown’s responses, belie Brown’s assertion that he treated it as a compound question. The questionnaire asks: "Have you had or do you now have any of the following? If so, what and when?" It then lists a variety of conditions, and a space to check "Y” or “N”. The item at issue in this case occupies two lines on the questionnaire. The first line reads: "Past or Present Back and”; the second line reads: "Neck Trouble”. Brown checked the "N” box for each line.

. We note that the jury made no specific finding on causation, but only considered causation together with the entire McCorpen defense. That is, they answered "no” to the compound question: "Do you find ... that Rickey Brown[] intentionally misrepresented or concealed material medical facts during his pre-employment examination and interview process, and that the facts which were concealed were causally linked to the injuries he suffered ...?" We also note that the district judge,, in denying Parker Drilling’s motion for JMOL on the McCoipen defense, did not reach the causation issue, because he found that Parker Drilling had not established intentional concealment.

. Cases where courts did not find a causal link are distinguishable on their facts. In Parker v. Noble Drilling Corp., No. 98-1196, 1999 WL 104414, 1999 U.S. Dist. LEXIS 2069 (E.D.La. Feb. 19, 1999), the district court denied the employer’s motion for summary judgment, holding that the employer had "not shown that the injury that caused [the claimant’s] prior back pain also caused the injuries he suffered on board the [vessel].” Id. at *2, 1999 U.S. Dist. LEXIS 2069, at *5. In that case, however, the employer failed to demonstrate that the claimant in fact suffered from a preexisting condition or disability! It merely showed that the claimant "complained of back pain on a prior occasion.” Id. at *2, 1999 U.S. Dist. LEXIS 2069, at *6. The court held that this showing was not sufficient to prove that the current injuries were "caused by a pre-existing condition.” Id. In Olympic Marine Co. v. Credeur, No. 92-2062, 1992 WL 345322, **2-3, 1992 U.S. Dist. LEXIS 17353, at *6-8 (E.D.La. Nov. 10, 1992), the district court held that a question of fact existed regarding whether the claimant’s current injury was in any way caused by his previous accidents. In that case, however, the employer had failed to show that the claimant's preexisting disability was "identical. or similar,” and there was "no evidence” of a "previous similar diagnosis.” Id. at **2-3, 1992 U.S. Dist. LEXIS 17353, at *7-8.

. Parker Drilling points out that Brown did not even seek attorney's fees, and thus "Parker's actions were not attacked as arbitrary and capricious by Brown.” This fact, while true, is irrelevant to the issue before this Court. Compensatory damages do not turn upon the employer's arbitrariness and capriciousness, but rather upon the employer's unreasonableness. See Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir.1987) ("If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees.”). Because one who acts merely unrea- . sonably is less culpable than one who acts arbitrarily and capriciously, the fact that Brown did not seek attorney’s fees is beside the point.

. In Yarbrough v. Sturm, Ruger & Co., this Court observed that "[i]t is inconceivable that the juiy could find liability and then award damages for past but not future disfigurement, for past and future medical expenses but not for past and future pain and suffering.” 964 F.2d 376, 379 (5th Cir.1992).