REVISED APRIL 11, 2006

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

——————————————

No. 03-30782

——————————————

RICKEY BROWN,

Plaintiff-Appellee,

versus

PARKER DRILLING OFFSHORE CORPORATION,

Defendant-Appellant.

———————————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————————————————————————

ON PETITION FOR REHEARING EN BANC

(Opinion 5/17/05, 5th Cir., *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166)

Before DeMOSS, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:

Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. The court having been polled at the request of one of its members, and a majority of the judges who are in active service not having voted in favor (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

- 1 -

CARL E. STEWART, Circuit Judge, with whom KING, HIGGINBOTHAM, WIENER, BENAVIDES, and DENNIS, Circuit Judges, join dissenting from the denial of rehearing en banc.

I respectfully dissent from the court's denial of rehearing en banc in this case in which the panel majority reversed the district court's denial of Parker Drilling's motions for judgment as a matter of law and for a new trial, thereby reversing the jury's grant of maintenance and cure to seaman Brown. Today, the full court countenances the panel majority's usurpation of the jury's constitutionally defined role as fact-finder, irreparably harming the jury system in this circuit.

To be clear, the crux of my disagreement with the panel majority is not about what the outcome might have been had I been on the jury, nor about all of the legal components of the *McCorpen* defense.[1] Having carefully read the full trial record, my primary disagreement with the panel majority rests on my understanding of the jury's role as fact-finder and of our limited role as appellate court judges. Brown, a seaman, alleged he was injured while working on an offshore drilling rig and brought suit against his employer seeking, inter alia, maintenance and cure. Following a three-day jury trial before an experienced trial judge, the jury deliberated for five hours and returned a verdict in favor of Brown on some, but not all of his claims. Parker Drilling then filed a Motion for

_____

[1]Nevertheless, I wholeheartedly agree with Judge Wiener's special concurrence, which thoroughly explains the panel majority's errors with regard to *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968).

Judgment as a Matter of Law and a Motion for a New Trial. As I explained in my dissent from the panel's decision, *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 184-85 (2005) (Stewart, J., concurring in part and dissenting in part), the district court carefully considered these motions, and, in a twenty-five page, detailed and lucid opinion, ultimately concluded that there was a legally sufficient basis for a reasonable jury to find in favor of Brown and that the jury's verdict was not against the great weight of the evidence. Contrary to the intimation of the panel majority, the trial judge was not "asleep at the switch."

The Seventh Amendment guarantees litigants a right to a trial by jury and the Supreme Court has repeatedly admonished us not to substitute our judgments for those of the jury, *see, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000), yet the panel majority's decision can only be understood as such. The jury accepted Brown's version of the events and rejected Parker Drilling's and, as the district court correctly determined, taken in the light most favorable to Brown, there is sufficient evidence in the record to support the jury's verdict. Even though Parker Drilling's counsel more than adequately placed the issue of Brown's credibility before the jury, the panel majority initially reversed the verdict in favor of Brown concluding that the jury had clearly erred. On panel rehearing, apparently in response to enlightened skepticism, it re-characterized the case as turning on an issue of law, laying the purported reversible error at the feet of the trial judge rather than the jury. But despite the panel majority's protestations to the contrary, this case remains exactly what it was when the panel first heard it–a vigorously tried case by experienced counsel on both sides before a seasoned trial judge, after which the jury returned a verdict that is (or should be) insulated from appellate fact-finding. And

regardless of which chameleonic legalisms the panel majority uses to explain it, the panel majority's decision remains what it was from the beginning–an audacious exercise in violating the Seventh Amendment.

The panel majority, under the guise of correcting errors of law, usurped the jury's Seventh Amendment function, replacing the jury's verdict with a verdict of its own. Brown's petition for rehearing en banc was not an invitation for the full court to re-try this case for a third time, but an opportunity to correct the lamentable message that the panel majority's decision sent to the bench and bar throughout the Fifth Circuit–no jury verdict is invulnerable before this court. The panel majority's decision commandeered the jury's role as fact-finder and it is principally for this reason that I vehemently dissent from the full court's refusal to rehear this case en banc.

JACQUES L. WIENER, JR., Circuit Judge, Specially concurring in Judge Stewart's Dissent from Denial of Rehearing En Banc[**]

I concur in Judge Stewart's opinion dissenting from this court's refusal to grant a rehearing en banc. I do not disagree with Judge Stewart's dissent in any way, nor do I disagree with either of his earlier panel dissents; indeed, I wholeheartedly agree with them all. Rather, I write only to supplement Judge Stewart's latest dissent with a more detailed explication of where, with respect, I perceive my colleagues of the panel majority (and those who failed to vote to rehear it en banc) to have violated our venerable precedent, thereby —— unintentionally, I am sure —— doing damage to the federal courts' civil jury system and thus to the Seventh Amendment to the United States Constitution.

## I. Framework

In this maritime jury trial case, Brown, a seaman, claimed maintenance and cure for injuries incurred in a witnessed and documented traumatic accident on an offshore petroleum platform during the course and scope of his employment. Parker Drilling, the employer or "vessel owner," defended against payment of maintenance and cure to Seaman Brown. Parker Drilling did so based on Brown's omission, from a pre-hiring job application, of information about previous "back trouble" that he had experienced while working for prior employers. Specifically, Parker Drilling contended that it would not have hired Brown if he had not intentionally concealed that information, which ——

---

[**] Judges King, Higginbotham, Benavides, Stewart, and Dennis concur in this Special Concurrence.

according to Parker Drilling —— would have revealed prior medical problems that had a nexus with his present injury. Parker Drilling characterized Brown's conceded omissions <u>as intentional misrepresentation or concealment of medical facts</u>. Despite extensive and brutally zealous cross-examination by counsel for Parker Drilling, however, Brown stuck to his simplistic but straightforward explanation: Although he <u>knowingly</u> (i.e., not negligently or inadvertently) left out references to prior muscle-pulls and back sprains he had experienced while working at previous manual labor jobs, he did so in the belief that the questionnaire was not asking about such relatively minor problems but only about serious "back trouble." Specifically, Brown testified that he thought that the questionnaire was referring only to "...disc and all that, you know, broke back, a disc, neck being broke or something, the injury a real one instead of a pulled muscle."

After hearing this and much more testimony from (and cross-examination of) Brown, as well as from his treating physician and other doctors, from Parker Drilling's medical experts, and from eyewitnesses, the jury (1) credited Brown's explanation, viz., that his <u>knowing omission</u> of prior back sprain information was not an <u>intentional misrepresentation or concealment of medical facts</u>; and (2) rejected Parker Drilling's claim of a connection between, on the one hand, those prior pulls and strains, caused by over-exertion or heavy lifting on previous jobs, and, on the other hand, the distinguishable violent and more serious injury suffered on Parker Drilling's offshore rig, caused by a sudden and violent "kick" of the equipment. After the jury found for Brown and awarded, <u>inter alia</u>, maintenance and cure (as well as finding bad faith denial by Parker Drilling), the district court, in a lengthy and well-reasoned ruling, denied Parker Drilling's post-verdict motions to have the jury's verdict overturned.

## II. Controlling Law

- 6 -

All agree that the almost-conclusive presumption that every injured seaman is entitled to maintenance and cure is subject to one —— but only one —— exception that would let the vessel owner off the maintenance-and-cure hook. For more than thirty-five years, a vessel owner in this circuit could avoid liability for maintenance and cure in only one way: proving, by a preponderance of the evidence, all three prongs of the conjunctive test set forth in the landmark McCorpen case.[1] Under that test, the vessel owner has always had the burden of proving to the trier of fact (here, the jury) that:

1. The claimant intentionally misrepresented or concealed medical facts [**first prong**],

2. The non-disclosed facts were material to the employer's decision to hire the claimant [**second prong**], and

3. A connection exists between the withheld information and the injury complained of in a lawsuit [**third prong**].[2]

The second prong of the McCorpen test —— that Parker Drilling would have not hired Brown had it known that he had previously experienced job-related muscle pulls and back sprains —— went largely uncontested. I thus assume for today's purposes that Parker Drilling met its burden on the second (hiring nexus) prong of McCorpen, i.e., a nexus between hiring Brown and the muscle-pull information that he omitted. As for the first and third prongs, however, I respectfully but strenuously disagree with the panel majority's determinations —— and thus with the implied

---

[1] McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547 (5th Cir. 1968).

[2] Id. at 48-49 (Bracketed information added).

determinations of those of my colleagues who declined to support rehearing this case en banc —— that, despite the jury's determination on the basis of a significant quantity of admittedly disputed fact evidence, (1) Brown's omission of back sprain information on his employment questionnaire constituted intentional misrepresentation or concealment of medical facts (McCorpen's first prong), and (2) that there was a nexus between the omitted back-sprain information and the traumatic injury suffered on Parker Drilling's offshore platform, the one for which Brown sought maintenance and cure (McCorpen's third prong). I remain convinced that this was legal error in the face of the jury's determinations reached at the end of a trial flawlessly conducted by the district court, that Parker Drilling had failed to meet its preponderance burden on these two of the three McCorpen prongs —— the failure on either of which should have doomed Parker Drilling's resistance to paying Brown maintenance and cure.

Yet the panel majority, which in its first opinion had reversed the jury's fact-intensive, hotly-contested, credibility-dependent verdict, withdrew that opinion and granted panel rehearing, only to reach essentially the same result. The second time, though, it did so by, of all things, reversing the district court's refusal to reverse the jury and enter judgment in favor of Parker Drilling.

I read the panel majority's opinion on rehearing as confusing or conflating intentional omission of medical evidence (which the panel majority stated to be an objective inquiry) with McCorpen's "intentionally misrepresent[ing] or conceal[ing] medical facts," a subjective inquiry. The panel majority obviously re-weighed the evidence, then faulted the district judge for not having done what the panel majority did in its initial appellate opinion, viz., reverse the jury by conducting a

constitutionally impermissible <u>appellate review of the facts</u>. And it did so despite our long-settled and

well-established standard of appellate review under these circumstances:

> We review <u>de novo</u> the district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court.[3] But, when a case is tried by a jury, a Rule 50(a) motion is a challenge to the legal sufficiency of the evidence.[4] In resolving such challenges, we draw reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party.[5] Thus, we will reverse the denial of a Rule 50(a) motion only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict.[6] A jury verdict must be upheld unless 'there is no legally sufficient evidentiary basis for a reasonable jury to find' as the jury did.[7]

The record contains a plethora of evidence, much on both sides of the various fact

issues, and considerably more than just Brown's putatively self-serving explanation. But, drawing

all inferences and resolving all credibility determinations in favor of Brown (the nonmoving party and

the victor before the jury), an appellate court simply cannot say, as a matter of law, that the evidence

pointed so strongly and overwhelmingly against Brown and in favor of Parker Drilling that "no

reasonable juror could return a contrary verdict."[8] Mischaracterizing intention to <u>omit</u> a fact as

---

[3] <u>Cozzo v. Tangipahoa Parish Council-President Gov't.</u>, 279 F.3d 273, 280 (5th Cir. 2002).

[4] <u>Brown v. Bryan County</u>, 219 F.3d 450, 456 (5th Cir. 2000).

[5] <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).

[6] <u>Cousin v. Trans Union Corp.</u>, 246 F.3d 359, 366 (5th Cir. 2001).

[7] Fed. R. Civ. P. 50(a)(1); <u>Hiltgen v. Sumrall</u>, 47 F.3d 695, 700 (5th Cir. 1995).

[8] <u>Cousin v. Trans Union Corp.</u>, 246 F.3d at 366.

intention to <u>misrepresent</u> or <u>conceal</u> a fact undoubtedly contributed to the impermissible reversal of the trial judge's refusal to supplant the jury verdict with Parker Drilling's view of the evidence.

The core problem that results from denying en banc rehearing and thereby allowing this case to stand lies in the recognition that it matters not whether federal district judges (much less federal appellate judges) can bring themselves to credit Brown's simplistic, uneducated explanation that he did not think that back sprains and muscle pulls amounted to the kind of "back trouble" about which Parker Drilling's questionnaire was inquiring. What does matter so critically to the civil jury law of this circuit, however, is that a jury of <u>Brown's peers</u> (who obviously understood and identified with the common kind of blue-collar, physically strenuous, manual labor regularly encountered in the "oilpatch") recognized the truism that workers like Brown go home every night bone-weary, muscle-sore, and bodily-bruised —— and think nothing of it! These jurors, who observed Brown's demeanor, heard his treating physician's testimony about the earlier muscle strains, listened to the extensive cross-examination of Brown, and considered all the other evidence, concluded that, yes, Brown did (as he admitted) intentionally omit the earlier information, but, no, he did <u>not</u> do so with the intention of concealing or misrepresenting anything.

Parker Drilling's failure to bear its burden of proving the first prong of <u>McCorpen</u> was all that should have been necessary to insulate the jury verdict against this vessel owner's post-verdict efforts to get the district court to overrule the jury. This is true "in spades" on appeal. Unlike the district judge (who, like the jury, observed Brown and all other witnesses firsthand), the two appellate judges of the panel majority overruled the district court —— and thus the jury's verdict for Brown —— on nothing more than the "cold record."[9]

---

[9] We also should have reheard this case to correct the panel majority's equally

### III. Conclusion

This is precisely the kind of civil <u>jury</u> case in which the verdict (and the refusal of the district court to supplant it) should not have been overturned on appeal. Otherwise, as Judge Stewart pointed out in his panel dissents and again in his dissent from denial of rehearing en banc, we do irreparable harm to the civil jury system in this circuit when we allow the panel majority's jury reversal to stand. We simply cannot sit in our remote, monastic chambers, look only at the record on appeal, then say that these cold facts point so strongly in favor of the vessel owner that reasonable jurors could not have arrived at a verdict for the seaman. This is especially true when, as here, the vessel owner's only legally recognized avenue of escape from its virtually automatic obligation to pay maintenance and cure was to prove <u>all three</u> prongs of <u>McCorpen</u>'s conjunctive test to the satisfaction of the jury. To repeat, I concur in Judge Stewart's Dissent from Denial of Rehearing En Banc and, despite my genuine respect for my colleagues who voted otherwise, offer the foregoing to supplement Judge Stewart's reasons for concluding that, indeed, this case cried out to be reheard en banc.

---

erroneous treatment of <u>McCorpen</u>'s third prong, viz., the nexus between Brown's prior "back problems" and his instant, trauma-caused and uncontested injuries. Here again, I respectfully disagree with the panel majority's confusing or conflating the <u>second</u> prong's required nexus between prior medical conditions and a decision to hire with the <u>third</u> prong's required nexus between prior medical conditions and the current injury. That erroneous treatment of <u>McCorpen</u>'s third prong should have been reheard and corrected en banc as well.